**TENNESSEE VALLEY AUTHORITY**
POLK COUNTY, TENN. (STATE OF
TENNESSEE, Intervenor).

No. 646.

District Court, E. D. Tennessee, S. D.
Sept. 25, 1945.

On Motion for New Trial Nov. 7, 1945.

Thomas J. Griffin, General Counsel, Tennessee Valley Authority, of Knoxville, Tenn., for plaintiff.

Harry J. Schaeffer, of Chattanooga, Tenn., for defendant.

Roy Beeler, Atty. Gen., of Tennessee, for intervener.

DARR, District Judge.

With some modifications the statement of the case as presented in the plaintiff's brief is adopted as the recitation of the facts constituting the controversy and is as follows:

The complaint in this action seeks a declaratory judgment as to the respective rights of the plaintiff and the defendant under section 13 of the Tennessee Valley Authority Act.[1] Section 13 directs the Tennessee Valley Authority to make certain payments in lieu of taxes to those states and counties in which the power operations of the corporation are carried on and in which the corporation has acquired properties previously subject to state and local taxation. Under this section of the statute, the corporation is required to pay 7½ percent of the gross proceeds derived from the sale of power by the corporation for the fiscal year beginning July 1, 1943. This sum is to be apportioned among the states in accordance with a formula based on gross proceeds from the sale of power within each state and the book value of the power property held by the corporation within each state. The amount apportioned to each state is further apportioned between the state and counties as follows: The corporation pays directly to each county an amount equal to the average tax levies during the last two years of private ownership or operation against "power property purchased and operated by the Corporation" in the county and against that portion of reservoir lands allocated or estimated to be allocable to power (sec. 13). The balance of the amount apportioned to each state is paid directly to the state.

The present controversy arises out of the following situation: In the year 1939 the plaintiff acquired the electric transmission and generating properties of the Tennessee Electric Power Company located in Polk County, Tennessee. Among the properties so acquired were 7.52 miles of 110-kv transmission line and 7.48 miles of 66-kv transmission line running between the generating plants known as Ocoee No. 1 and Ocoee No. 2, together with a section of railroad spur track from a point known as Big Creek trestle to a storage yard near Ocoee No. 2. These properties were located wholly within Polk County, and until the fiscal year 1943 they were actually used and operated by the corporation.

The purpose of these transmission lines was to serve the Copperhill area. Due to the construction of generating facilities at the Authority's Chickamauga, Hiwassee, Apalachia, and Ocoee No. 3 projects, the Authority's transmission system was rearranged so that these transmission lines were no longer needed, since the load formerly carried by these lines was being transmitted over the rearranged lines. These lines were therefore dismantled by the plaintiff during the fiscal year beginning July 1, 1942.

For the fiscal year beginning July 1, 1942, plaintiff paid to the defendant Polk County the sum of $111,570.60, computed as required by section 13 of the Tennessee Valley Authority Act. Included in this amount was $6,320, representing the two-year average of the county ad valorem tax on the transmission lines here involved. Since these lines were abandoned or changed by the Authority prior to June 30, 1943, the Authority concluded that they were not "operated by the Corporation" during the fiscal year beginning July 1, 1943, and plaintiff accordingly notified the defendant that the final payment to it for that fiscal year would be reduced by the amount of $6,320 and that the Authority's payment to the state would be increased by a like amount.

The county protested this deduction, asserting that under a proper construction of section 13, this amount was payable to it and not to the State of Tennessee, and threatened to institute suit to enforce its alleged rights. The Authority was therefore placed in the position where if it paid this amount to the state, it was subject to a possible suit by the county; and if it paid this amount to the county, it was faced with possible action by the state. Under these circumstances the Authority filed the present action for a declaration of its rights pursu-

---

[1] 48 Stat. 66, Act May 18, 1933, as amended, Act June 26, 1940, 54 Stat. 626, 16 U.S.C.A. § 831l.

ant to the Federal Declaratory Judgment Act.[2] The answer of the county admits the facts alleged, but denies that the Authority's interpretation of the statute is correct. The State of Tennessee has intervened, asserting the correctness of the Authority's interpretation of the statute and demanding that the amount in question be paid over to it.

The Authority and the county have filed *motions for summary judgment*, each supported by an affidavit which describes the circumstances under which the lines were abandoned or changed and the manner in which the load at Copperhill is now served. There is no dispute as to any of the facts, and the question presented is simply a question of law as to the proper construction of the statute.

■ 1. The amount of money involved is not in controversy. The defendant claims that the plaintiff owes it $6,320 which is due and payable. The plaintiff denies that this obligation exists. ·This situation presents a substantial controversy between parties having adverse legal interest in which the relief sought is a reality requiring immediate determination. Such circumstances warrant the issuance of a declaratory judgment. Maryland Casualty Co. v. Pacific Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

■ 2. All the parties are in agreement on the facts. The question will be determined by a proper construction of section 13 of the TVA Act. Hence, a motion for a summary judgment is a proper procedure. Rule 56, Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c; Banco de Espana v. Federal Reserve Bank, 2 Cir., 1940, 114 F.2d 438; Boro Hall Corp. v. General Motors Corp., 2 Cir., 1942, 124 F.2d 822; American Ins. Co. v. Gentile Bros. Co., 5 Cir., 1940, 109 F.2d 732; Fletcher v. Krise, 1941, 73 App. D.C. 266, 120 F.2d 809.

3. According to the tenor of section 13 of the TVA Act the object of the Congress was to render financial assistance to states and local governments in lieu of taxation. This is particularly reflected in the hearings before the appropriate committees which preceded the passing of the 1940 Amendment which has become said section 13.

The plaintiff acquired very valuable power properties and reservoir lands in the Tennessee Valley, which resulted in substantial tax losses to the states and counties in which these properties and lands had been theretofore privately owned. The result of which was particularly burdensome to the counties affected in their efforts to maintain their schools, other county facilities, and to provide reserve funds and pay interest on indebtednesses evidenced by bonds.

■ From the provisions of section 13 itself, from a study of the committees' hearings, and a consideration of the remedy sought to be effective by the legislation, I am convinced that, insofar as the counties are concerned, Congress intended to replace to each county the taxes lost on the property acquired by the plaintiff in such county. I think a proper construction of section 13 relative to the rights of the counties will effectuate such intention.

On the question of what should be paid counties in lieu of taxes, section 13 provides: "Provided further, That the corporation shall pay directly to the respective counties the two-year average of county ad valorem property taxes (including taxes levied by taxing districts within the respective counties) upon power property and reservoir lands allocable to power, determined as above provided, and all payments to any such county within a state shall be deducted from the payment otherwise due to such State under the provisions of this section."

To ascertain how the value of the property is determined it is necessary to refer to prior provisions in this section wherein it is provided, "The said two-year average shall be calculated for the last two tax years during which said property was privately owned and operated * * *."

To ascertain what "said property" means it is necessary to refer to the same provision wherein the following is found: "Provided, That the minimum annual pay-

---

[2] 36 Stat. 1087, Act March 3, 1911, as amended, 48 Stat. 955, June 14, 1934, 28 U.S.C.A. § 400.

ment to each State (including payments to counties therein) shall not be less than an amount equal to the two-year average of the State and local ad valorem property taxes levied against power property purchased and operated by the Corporation."

This brings us to the prime question, which is, the determination of what is meant by "power property purchased and operated".

█ It is my opinion that the word "purchased" and the word "operated" have the same significance as to the time element. To include the field of activities intended, I think the word "purchased" includes property already acquired and property to be purchased, and, likewise, I think the word "operated" includes property theretofore operated after being purchased and property to be operated after it is purchased. This being true, my idea is that these words are for the purpose of valuation, where it appears that the property had been purchased and operated for any length of time by the plaintiff. If the property should be bought to eliminate competition, or for resale to a co-operative distributing organization or to anyone else, then there would be no payment in lieu of taxes on such property. It is perhaps common knowledge that the plaintiff, in order to effectuate its great program, was forced to buy a large amount of property that could not be economically utilized in order to secure properties desired. The plaintiff then disposed of the undesirable property the best it could. Perhaps this is the reason the word "operated" was included in this section.

It is my opinion that if the property is purchased and operated for any length of time, the formula for fixing the amount to be paid will become effective.

This might appear to obtain harsh results, but actually it does not. It is to be remembered that this financial aid to the counties is by grace of the government. It is true, of course, that this gift is to protect the counties from their tax losses. The construction given herein effects this purpose. Moreover, section 13 (Amendment, 1940) is a temporary experimental statute. The last paragraph of the section provides for a report from the plaintiff, giving detailed information as to how the provision of the section is working and "such other data, information, and recommendations as may be pertinent to future legislation".

█ I think it follows that the Congress intended that the plaintiff should make payment to the counties in lieu of taxes on all power property purchased and operated for any length of time in accordance with the formula provided in this section. If it should appear that there is an injustice done, or any sort of inequities arise, then such report can be made to the Congress and legislation passed to remedy the condition.

█ 4. Should the construction of section 13 as above made be erroneous, I feel that the intention of the legislation is carried out on the idea that this power property purchased has been rearranged and is still being operated.

It would seem absurd to argue that the Congress intended to provide that the payment in lieu of taxes would only be so long as the very physical property purchased and operated by the plaintiff existed. If this were the situation any change by repair of poles, towers, transmission lines, turbines, etc., would render the property different from that which was privately owned and operated and would result in no payment in lieu of taxes. Certainly this was not intended. These transmission lines had substantial value only by reason of the fact that electric energy was transmitted thereon to established customers. The poles and wires or towers and wires had negligible value within themselves if there had not been available electricity to transmit. The plaintiff is still transmitting electric energy generated at the same places and serving the same customers, and perhaps others. This is the substantial part of what was purchased and is still being operated by the plaintiff.

█ Also, I think a proper construction of the Act would include as "purchased and operated" any property operated within the county that substituted and stood in the place of the actual physical property purchased.

So, under either of these constructions of this section, both of which I believe to be sound and in line with the intention of the Congress, it is my opinion that a judgment should be entered declaring that the defendant, Polk County, Tennessee, is entitled to receive the payment of the amount now due in lieu of taxes and to continue to receive the said payments so long as said section 13 of the TVA Act is the law of the land.

Order accordingly.

## On Motion for New Trial

The plaintiff and the intervener have each filed a motion for a new trial.

So far as I can comprehend, neither of the seekers for a new trial offered new or different reasons to support their positions than had been heretofore presented.

The chief concern, however, particularly with the plaintiff, seems to be a great fear that the result of the construction of the statute involved as announced in the opinion filed would bring about glaring inequities. The plaintiff has an idea that compelling it to make payment in lieu of taxation on all power property purchased and operated by it for any length of time would require the plaintiff to continue payment on such property after the same had been sold and transferred. The plaintiff is also of the opinion that this situation would be applicable to their reservoir lands upon which payments in lieu of taxation are required under the statute.

The opinion in this case did not relate to reservoir lands and the wording in the statute concerning such lands is different from the wording relative to power property. But even if the same situation were applicable to reservoir lands as is declared to be concerning power property, the plaintiff does not have to make payment in lieu of taxation on either the property or the land sold and transferred, conditioned that the purchaser becomes liable for taxes or payment in lieu of taxation in a sum equal to or exceeding the amount required by the statute to be paid by the plaintiff.

The purport of this section of the TVA Act as to the payments therein provides, "The payments herein authorized are in lieu of taxation, * * *." The "in lieu" of course means the change of one thing for another. If the "one thing" is present, there cannot be "another". So if the counties affected by the statute received the payment of taxation, or payment in lieu of taxation, from sources other than the plaintiff, the plaintiff is not obligated to pay. The only obligation on the plaintiff is to make payment in substitution for taxes on the property described and according to the formula provided in the statute.

The formula is based on the two-year average during which the power property was privately owned and operated or the reservoir land was privately owned. If a purchaser of property or land from the plaintiff becomes liable to a county for taxes, or payment in lieu of taxation, in the amount equal to or more than the sum required to be paid by the plaintiff under the formula above set out, then the plaintiff will make no payment. But if the taxes, or payment in lieu of taxation, to be paid by the purchaser is less than the amount provided by the formula, the plaintiff must make up the difference. Practically, it is likely that the plaintiff would never have to make any payments where such property or such land has been sold and transferred.

Congress intended by the provisions under discussion to take care of the counties for tax loss to the extent provided. On all power property purchased and operated for any length of time, the plaintiff must pay according to the formula. If the property is changed or destroyed, the plaintiff must continue to pay, the remedy for such situations being for Congress. But if some private enterprise or public entity becomes liable for taxes or payment in lieu of taxation to the extent of the payment required of plaintiff, then the plaintiff could not be held to pay because the payments required of it are to be a substitute for a failure of payment from other sources. By this construction the counties are taken care of in the manner the Congress intended.

To my mind the plaintiff need not be alarmed about "double taxation", or that it will be required to make payments after sale and transfer of property or lands.

My judgment is that the opinion filed, together with the clarifications made herein, reaches the proper conclusions concerning the questions presented.

The motions are overruled.

Order accordingly.