EMPLOYERS RE-INSURANCE CORPORATION *v.* MRS. BIRDIE M. GOING.

(*Jackson,* April Term, 1930.)

Opinion filed April 5, 1930.

W. C. RODGERS, for complainant, appellant.

L. W. TAYLOR, for defendant, appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

An execution was issued in December, 1926, on a judgment previously entered in the case of *Birdie M. Going* v. *L. Clyde Going,* for alimony in the sum of $13,000. Garnishment was served thereunder on Employers Re-Insurance Corporation, in which the execution debtor was insured against disability, and which was at the

time indebted to him. The former husband, L. Clyde Going, after the judgment for alimony, had been adjudicated *non compos mentis,* and his guardian, a second wife, thereupon sought by petition and motion.in the cause to quash the execution, setting up satisfaction and a release by complainant Birdie M. Going of all claims under said judgment. This motion to quash was heard and overruled by the Chancellor on January 17, 1927, finding that the release set up was, in his opinion, without consideration. However, no decree was entered at the time, and not until October 1st following, when the entry was made *nunc pro tunc.*

Meanwhile, some months later, assuming (1) that the overruling decree had been duly entered, and (2) construing it to be final, rather than interlocutory, and therefore appealable, and no appeal having been taken, the Insurance Company, complainant herein, paid to the original complainant and judgment creditor, in full settlement, the sum of $2850 and they caused to be entered on July 30th a decree by consent of these two. parties confirming this settlement and discharging the Insurance Company garnishee.

Thereafter, on October 1st, the Court caused to be entered, *nunc pro tunc,* its overruling decree announced in January, from which an appeal was prayed but refused. It appears that a second motion to quash said execution was made and on this being overruled a final decree was entered in terms disposing of all issues in the cause, from which an appeal was prosecuted, resulting in the reversal of said decree and the sustaining of the motion to quash the execution under which the Insurance Company had been garnisheed, thus establishing liability to the guardian, then also executrix of L. Clyde Going, who had meanwhile died.

■ Complainant sets up this history of the proceedings and seeks to recover the sum of $2850 paid by it to Mrs. Birdie M. Going, alleging that the payment was made to her under a mutual mistake of fact, in that, (1) the parties mistakenly believed that the decree had been entered as of January 17, 1927, at the time the motion was acted on, (2) that they mistakenly believed it to be a final decree and appealable, and (3) that they mutually understood the settlement to be in full satisfaction of ''all claims and rights of any and all persons under the terms and conditions of the policy.''

The learned Chancellor has sustained a demurrer to the bill, holding (1) that no recovery can be had of a voluntary payment made under a mistake of law only, which seemed to be conceded, and (2) that the mistake alleged and relied on herein was not a mistake of fact, but one of law. His view was that the order as of January 17th was interlocutory only, and not a final decree. He says:

''The question, then, is whether the order of January 17th, if it had been entered on that date, would have been final or interlocutory. There were at that time three parties to the litigation, to-wit, Mrs. Birdie M. Going and Mrs. Verna K. Going, Guardian, and the Insurance Company as garnishee.

''It will be observed that the order does not adjudicate that Mrs. Verna K. Going, Guardian, had no interest in the funds in the hands of the garnishee, or in the insurance policy; at most it was an adjudication that Mrs. Birdie M. Going had the right to prosecute her garnishment proceedings to final judgment. But, Mrs. Verna K. Going, Guardian, also had the right to litigate with the Insurance Company with reference to the amount due under the policy. For aught that appeared from the

record she might have claimed that the garnishee owed much more than the garnishee afterwards admitted in its answer, to be due.

"I have reached the conclusion that the order was not final because it does not finally adjudicate and determine all the rights of Mrs. Verna K. Going, Guardian, in the fund in the hands of the garnishee; she would not have been entitled to an appeal from it; in fact, she prayed and was refused an appeal from the identical order when it was entered *nunc pro tunc* on October 1st; this was undoubtedly because it did not finally determine all her rights in the subject-matter of the litigation. The evidence' on her petition and motion to quash the execution was preserved by a way-side Bill of Exceptions, but the appeal was granted from a decree subsequently entered and not from the order overruling the motion to quash the execution.

"Complainant's mistake was one of law in construing the order of January 17th, (assuming that it had been entered) as finally adjudicating that Mrs. Verna K. Going, Guardian, had no interest in the fund in its hands. The language of the bill is that:

" 'Both parties (i. e. Mrs. Birdie M. Going and complainant) relying on the fact that such a decree was of record, that it had become final by lapse of time, and there was no longer any right or possibility of appeal that thereby all the rights and claims of L. Clyde Going, or that of his heirs or estate under said policy had been finally denied or disposed; and that the defendant, Mrs. Birdie M. Going, had thereby been finally adjudged entitled thereto, this complainant paid over to the defendant . . . the sum of $2850 as both parties thought and intended, in full settlement and satisfaction of all

claims and rights of any and all persons under the terms and condition of said policy.'

"Assuming that the order had been entered on January 17th, as it should have been, and as complainant believed it had been; still it would not have been final by lapse of time on July 30th, when complainant settled with Mrs. Birdie M. Going, because it was an interlocutory order from which an appeal was not allowed; it did not pretend finally to deny and dispose of all the rights and claims of L. Clyde Going, or his estate, under said policy; or to adjudge that the defendant, Mrs. Birdie M. Going, was entitled thereto.

"Complainant's mistake was in construing the order as adjudicating that L. Clyde Going had no rights under the policy, and that Mrs. Birdie M. Going was entitled, to the fund when there was nothing in the order to warrant such a construction, and in believing that such order was final by lapse of time.

"Complainant was not protected by the so-called consent decree of July 30, 1927, because Mrs. Verna K. Going, Guardian, did not consent to it and did not know it was entered.

"Corpus Juris, Vol. 28, p. 534, sec. 641, it is said: 'Payment by the garnishee to the plaintiff before the garnishment proceedings have been prosecuted to judgment is unauthorized and does not protect the garnishee against a recovery of the same debt by defendant or his assignee.' "

We concur in the reasoning and conclusion of the learned Chancellor. In *Mengle Box Company* v. *Lauderdale County,* 144 Tenn., 266, this court said: "This court has held many times that an appeal does not lie from an interlocutory order, whether it be the dissolution of an injunction, the quashing of an attachment, or the ap-

pointment of a receiver.'' Under the head of interlocutory decrees, Mr. Gibson, sec. 575, lists among those orders and decrees which are interlocutory rather than final, ''All decrees allowing or disallowing motions of all kinds whatsoever.'' An order discharging an attachment is interlocutory and not appealable. *Younger* v. *Younger*, 90 Tenn., 25. In the case at bar the action of the Chancellor as of January 17th dealt alone with an application by an interlocutory petition to discharge a garnishment on certain specific grounds, which application in the form of a motion was disallowed. This action did not cut off the garnishee from setting up defenses on the hearing for a judgment final against it; nor did it cut off the guardian from interposing other defenses to such final judgment. It is therefore plain that the order was interlocutory, was not appealable and that complainant's mistake was one of law.

In the cases mainly relied on for appellant for the proposition that such an order is appealable, the appeals were from final judgments against the garnishee, viz., *Kilisky* v. *Curry*, 9 Bax., 214; *Kaylor* v. *Brunswick*, 6 Heisk., 235, and *Walton* v. *Sharp*, 11 Lea, 581.

Counsel for appellant strongly urges equities which he insists the Chancery Court has power to recognize and enforce. He relies upon the recognition by the authorities that a case may arise in which there may be a recovery, even though the payment was made under a mistake of law. This was so stated in *Leach* v. *Cowan*, 125 Tenn., page 206, but the Court therein emphasized that ''it must be under such circumstances as the Court can see that it would be unconscionable for the party who obtained the advantage in such transaction or settlement to retain that advantage.'' The Court cites numerous cases which illustrate this principle. An examination

of those cases demonstrates that mutual ignorance and mistake merely will not justify the application of the principle. Elements of wrong doing, generally intentional on the part of the party receiving the benefit, must appear. For example, Mr. Pomeroy is quoted in *Spurlock* v. *Brown*, 91 Tenn., page 260, for this statement of the rule:

"If the mistake of law is not pure and simple, but is induced or accompanied by other special facts giving rise to an independent equity on behalf of the mistaken person, such as *inequitable conduct of the other party,* there can be no doubt that a Court of Equity will interpose its aid. Equity Jurisprudence, sec. 842."

A number of our cases are reviewed and it is made clear that if the mistake is one of law, equity may relieve only where the mistake has been brought about by the representations of the other party, or where the ignorance has been superinduced by the other party, where some confidence has been taken advantage of, and like cases.

On page 263 (*Spurlock* v. *Brown, supra*), a good statement of the doctrine is quoted from Lawson's Rights and Remedies, sec. 2341, as follows: "But the common law rule, which refuses relief against ignorance or mistake of law, and which is equally applicable in Courts of Law and Equity, is not enforced in equity where such ignorance or mistake is induced by fraud or imposition, or undue influence, or an *abuse of confidence,* springing out of the peculiar relations existing between the parties."

There is absolutely nothing in this record to suggest conduct on the part of Mrs. Birdie M. Going which brings the case within the rule as thus stated.

■ A compromise was entered into in perfect good faith on the part of both parties, under the impression

that the overruling of the motion to quash the execution by the Chancellor in January preceding the making of the payment, was a final judgment from which an appeal lay, and that the time for appeal having expired the rights of the parties were so concluded as to justify the payment by the Insurance Company to Mrs. Going.

While the mistake thus made appears to have worked a hardship on the complainant, the doctrine is too well established, which denies the right of recovery of a voluntary payment made under mistake of law, to warrant the granting of relief under the bill in this cause. It results that the decree must be affirmed.