RUTHERFORD COUNTY, TENNESSEE, Appellant,

*v.*

CITY OF MURFREESBORO, TENNESSEE.

(*Nashville*, December Term, 1956.)

Opinion filed July 29, 1957.

456

RIDLEY & BOULDIN, Murfreesboro, for complainant.

A. B. HUDDLESTON, Murfreesboro, EDWIN F. HUNT, Nashville, for defendant.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Rutherford County filed the bill in this case for the purpose of recovering something over $200,000 from the City of Murfreesboro, on the theories hereinafter re-

ferred to. There was a decree in favor of the defendant, City of Murfreesboro, from which Rutherford County has appealed.

We have examined the authorities cited in the respective briefs and the pleadings, the contract exhibited to the bill, and the opinion of the Chancellor. We are of opinion that the Chancellor in his opinion has fully and ably covered the questions raised by the bill and the demurrer to same. We do not deem it necessary to add anything to the opinion of the Chancellor and we accordingly adopt the same as the opinion of this Court, which is as follows:

"The facts alleged in the bill are substantially as follows:

"The defendant city entered into a contract with Tennessee Valley Authority for the purchase of electric power, which contract took effect during the year 1939. By the terms of this contract the city established its electric system as a separate department, and was required to maintain its funds separately from other funds. The municipality was authorized to take from the electric department revenues or funds for the general funds of the municipality an amount in lieu of taxes, to be determined as follows:

"(1) The prevailing municipal property tax rate shall be applied to the value of the property used in electric operations within the municipal limits.

"(2) The tax equivalent paid to municipality's general funds under (1) above shall be increased by application of the county and state tax rates to the value of

the electric system, unless the county and/or state governments levy property taxes upon the electric system, in which case municipality shall not take the county and state tax equivalents for such taxes as are assessed.

"The city has established its rates at such figure as to enable it to withdraw from the electric system funds payments in lieu of taxes, including the county tax equivalent. This county tax equivalent has been retained by the city and no part of the same has ever been paid to the county. The bill seeks to recover the sum total of the amount of county tax equivalent transferred from the electric system funds to the general funds of the municipality on one of two alternative theories;

"(1) that the county is a third party beneficiary of the contract between T.V.A. and the municipality, with respect to the funds in controversy, or (2) that such funds, held by the city, are impressed with a constructive trust for the benefit of the county.

"For demurrer the city says that the complainant, not being a party to the contract nor interested therein as beneficiary or otherwise, has no equitable interest in revenues of the Murfreesboro Electric Department paid into the general fund of the municipality, and is therefore not entitled to any relief.

■■ "The complainant's theories will be considered in the order stated above. The question whether this contract was intended for the benefit of the county, a third party, is one of construction and depends upon the intention of the parties to the contract. 12 Am. Jur., Contracts, section 280. The law presumes that a contract is executed for the benefit of the parties thereto

and not third persons, and a third person claiming benefits thereunder has the burden of proving that the contract was made for his benefit. *Sherrill v. Erwin,* 31 Tenn.App. 663, 220 S.W.2d 878. The court must be guided by these principles in determining whether the county is entitled to the benefit claimed under the contract. The contract nowhere expressly says that the county is to receive any benefits thereunder. The contract nowhere expressly obligates the city to pay over to the county the county tax equivalent taken from the electric department revenues. It must then be determined whether the language of the contract by implication grants such benefit to the county. Section 5(d) of the contract obligates the city to dispose of gross revenues in the following manner:

"1. For the payment of all current operating expenses.

"2. From remaining revenues payment at maturity of interest and amortization charges and/or sinking fund payments.

"3. Thereafter revenues shall be used currently to set up reserves and provide cash working capital.

"4. 'From remaining revenues municipality may thereafter pay into its general fund a return on its investment and a tax equivalent as provided in the Financial and Accounting Policy in the Schedule of Terms and Conditions of Contract attached hereto.'

"5. Remaining revenues are surplus and may be used for the purchase or retirement of indebtedness before maturity or as the basis for the reduction or elimination of surcharges to consumers, and thereafter for the reduction of rates.

■ "Section 9 states the purpose of the contract to be primarily for the benefit of ratepayers and recites that the municipality 'shall receive from the operation thereof for the benefit of its General Fund, *to be used for any permissible municipal purpose,* only (1) a return on any investment made from general funds in the system, and (2) an amount in lieu of taxes, representing a fair share of the cost of government properly to be borne by such system.' (Emphasis supplied.)

"The formula for determining the amount in lieu of taxes, as quoted at the beginning of this opinion, is found in section 10(d) of the Schedule of Terms and Conditions, attached to and made a part of the contract. This contract does not confer the benefit contended for by the county, unless such benefit is conferred by fair implication by the application of the county tax rate to the value of the electric system, in determining the amount in lieu of taxes the city may transfer to its general fund. This Court construes this formula as merely stating a criterion by which the amount in lieu of taxes is to be measured, rather than as creating any rights in any subdivision of government whose tax rate happens to be used as the yard stick. The exclusion of the application of the county tax rate if the county levies a tax on the sytem does not change the construction, but merely serves to fix a limit on the depletion of the revenues of the system. This conclusion is inescapable from the language of section 9 of the contract defining the use of the amount in lieu of taxes to be 'for any permissible municipal purpose.' Clearly payment of this money to the county would not be for a municipal purpose. The Court feels that this reasoning also disposes of complainant's

contention made in support of its first theory, that the city has waived its exemption from county taxation as to its electric system.

"It remains to be determined whether the defendant holds this money under a constructive trust for the benefit of the county. A constructive trust is a trust by operation of law which arises contrary to intention and *in invitum,* against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. 54 Am. Jur., Trusts, section 218. The keystone of complainant's argument seems to be that the county is equitably entitled to this tax equivalent to compensate it for the loss of county tax revenues by reason of public ownership of the electric system. All municipal property that is used exclusively for municipal purposes is exempt from taxation. Constitution of Tennessee, Art. 2, section 28; TCA section 67-502. The court is cited to no rule of law or equity requiring a municipality to assuage the disappointment of a county resulting from a decline of its revenues when property formerly privately owned is acquired by the municipality and used for a municipal purpose. The case is not changed by the fact that the city is permitted to apply the county tax rate in arriving at the amount it may place in its general fund from the electric system revenues. The city is permitted but not required to take the amount in lieu of taxes from its electric system funds. The law of this

State imposes on the city no obligation to collect, for the benefit of the county, county taxes on property exempt from taxation. The money in controversy is collected from customers for electricity furnished by the municipal electric system. It is then the property of the system. The city is authorized by its contract with T. V. A. to place the money in its general fund. It is never legally or equitably owned by the county. *Gas Light Co. v. City of Memphis,* 93 Tenn. 612, 30 S.W. 25, is not authority for complainant's contention. In that case the company had furnished illuminating gas to the city and the city had levied a tax for the specific purpose of lighting the streets. The court held that an express trust existed.

"The T. V. A. Act, as it existed when this contract became effective, authorized T. V. A. to sell surplus power and conferred upon the Board of Directors broad authority 'to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purpose of this Chapter.' 16 U.S.C.A. [sec.] 831*l*. The Act was amended in 1940, after the effective date of this contract, to require T. V. A. to pay a percentage of its gross receipts to states and counties. The 1940 amendment contains the following language:

" 'Nothing herein shall be construed to limit the authority of the Corporation in its contracts for the sale of power to municipalities, to permit or provide for the resale of power at rates which may include an amount to cover tax-equivalent payments to the municipality in lieu of State, county and municipal taxes upon any distribution system or property owned by the municipality,

or any agency thereof, conditioned upon a proper distribution by the municipality of any amounts collected by it in lieu of State or county taxes upon any such distribution system or property; it being the intention of Congress that either the municipality or the State in which the municipality is situated shall provide for the proper distribution to the State and county of any portion of tax equivalent so collected by the municipality in lieu of State or county taxes upon any such distribution system or property.' 16 U.S.C.A. [sec.] 831*l*.

"Complainant insists that this amendment obligates the defendant to pay in the sum it demands. Complainant further insists that this is no new law, but is merely declaratory of the law as it previously existed. Under the applicable Federal statute in effect in 1939, the city was not required to make this payment to the county. If the 1949 amendment has the effect contended for by complainant, it is not merely declaratory of existing law, but materially changes the law as it existed prior to its enactment. Furthermore, by imposing new duties on the city and depriving it of that to which it was previously entitled under the terms of its contract, it impairs the obligation of the contract between the city and T. V. A. Without regard to the constitutional question, the T. V. A. act itself provides that amendments shall not operate to impair the obligation of any contract made by T.V.A. under power conferred by the Act. 16 U.S.C.A. (sec.) 831bb.

"The demurrer will be sustained.

"Knox Bigham Chancellor".

The decree of the Chancellor is accordingly affirmed.