City of Shelbyville, Appellant,

*v.*

State ex rel. Bedford County, Appellee.

415 S.W.2d 139.

(*Nashville*, December Term, 1966.)

Opinion filed April 26, 1967.

198

JOHN C. SHOFNER, Shelbyville, and EDWIN F. HUNT, Nashville, for appellant.

L. S. HAUGLAND, Shelbyville, for appellee.

Mr. Justice Chattin delivered the opinion of the Court.

The City of Shelbyville acquired an electric distribution system in 1939 and has owned it since. Under a contract with TVA the City purchases wholesale electric power from TVA and uses the power for its own purposes and also distributes it to its customers in the City and Bedford County.

Being owned by the City, the properties of the utility are tax-exempt under T.C.A. Section 67-502(1). Prior to 1939, the utility was privately owned; and, as such, was subject to taxation by the City and Bedford County. The City and County have, therefore, been deprived of a tax source.

The contract by which the City purchases power from the TVA is a second such contract between these parties. The first contract was for twenty years, which ended in 1959. The second contract was executed in 1959 and extends through 1979. The second contract was made under authority of the Tennessee Valley Authority Act of 1933, 48 Stat. 58, as amended June 26, 1940, 54 Stat. 626, 16 U.S.C.A. sec. 831.

Under the terms of the contract, the City may sell electric power at rates which include an amount to cover tax equivalent payments to the City in lieu of State, County and municipal taxes upon the distribution system.

Prior to 1940, no provision was contained in the TVA Act respecting the payment of a tax equivalent out of the revenues of the municipal electric system. Nevertheless, TVA did include in its contracts a provision allow-

ing a City to take out of surplus revenues of its power distribution system a tax equivalent which approximated the City, County and State tax rate on the property. In 1940, Congress adopted an amendment to Section 13 of the Act, a portion of which reads as follows:

"Nothing herein shall be construed to limit the authority of the Corporation in its contracts for the sale of power to municipalities, to permit or provide for the resale of power at rates which may include an amount to cover tax-equivalent payments to the municipality in lieu of State, county, and municipal taxes upon any distribution system or property owned by the municipality, or any agency thereof, conditioned upon a proper distribution by the municipality of any amounts collected by it in lieu of State, or county taxes upon any such distribution system or property; it being the intention of Congress that either the municipality or the State in which the municipality is situated shall provide for the proper distribution to the State and county of any portion of tax equivalent so collected by the municipality in lieu of State or county taxes upon any such distribution system or property."

Pursuant to this amendment, TVA provided in its 1959 contract with the City that it, "shall be the responsibility of the municipality to provide for such distribution as may be required by law or as it deems appropriate under the provisions of Section 13 of the TVA Act." Distribution is not required by statute in Tennessee and the City did not deem it necessary to make any distribution under the provisions of Section 13 of the Act. Until 1961, the City retained the whole tax equivalent for its own use.

In 1961, Bedford County sued the City of Shelbyville for a share of the tax equivalent that had been collected by the City since the inception of the 1959 contract. It was alleged that through August 31, 1961, approximately $121,000.00 had been collected of which about $69,000.00 was in lieu of county taxes. The theory of the County's bill was that under the 1940 amendment to the TVA Act and the 1959 contract, the City was obligated to pay over to the County a part of the tax equivalent.

The question raised had already been litigated in another case in this State. In 1957, it was established by this Court that under a contract made prior to 1940, a City had no obligation to pay over any portion of its tax equivalent revenue to the County. *Rutherford County v. City of Murfreesboro,* 202 Tenn. 455, 304 S.W.2d 635 (1956). In 1958, however, this Court, in construing the 1940 amendment, held under the City's contract made after 1940, it was obligated to share its tax equivalent with the County. *Rutherford County v. City of Murfreesboro,* 205 Tenn. 362, 326 S.W.2d 653 (1958). Certiorari was denied by the United States Supreme Court. 361 U.S. 919, 80 S.Ct. 257, 4 L.Ed.2d 187.

In 1962, the United States District Court at Winchester heard a suit for a declaratory judgment filed by the City of Tullahoma against Coffee County and followed the ruling in the Murfreesboro case decided in 1958. *City of Tullahoma v. Coffee County,* 204 F.Supp. 794 (D.C.1962). On appeal, the case was reversed by the Court of Appeals for the Sixth Circuit, concluding that Congress did not intend to legislate directly as to the distribution of tax equivalents at the state and local levels. *City of Tullahoma v. Coffee County,* 328 F.2d 683 (6 Cir.1964). Certiorari was denied by the Supreme

Court of the United States. 379 U.S. 989, 85 S.Ct. 698, 13 L.Ed.2d 609. Accordingly, the law, as interpreted by the Federal Courts, is the TVA Act does not require cities make distribution under the 1940 amendment. Under this view, TVA has no duty with reference to the proper distribution of tax equivalents but such is determined exclusively by the states and municipalities.

The suit filed by Bedford County in 1961 was not disposed of until April 27, 1963, at which time a consent decree was entered into by the City and the County. The decree provided:

"It is, therefore, ordered, adjudged and decreed by the court that Bedford County, Tennessee, have and recover of the defendant, City of Shelbyville, Tennessee, the sum of Thirty-Six Thousand Five Hundred Dollars ($36,500) in full and complete satisfaction of all claims and demands of said complainant for its proportionate share of the in-lieu-of tax revenues paid by the municipal electric distribution system of the City of Shelbyville to it prior to January 1, 1963, and that thereafter, annually, beginning January 1, 1963, and so long as the defendant, City of Shelbyville, Tennessee, receives and collects in-lieu-of tax payments from its municipal electric distribution system under the terms of its existing power contract with the Tennessee Valley Authority, the City shall pay over and account to Bedford County, Tennessee, annually, for twenty-two and one-half per cent (22½%) of all such revenues so received and collected."

The County filed the instant suit to enforce the terms of the consent decree on December 17, 1965.

The City complied with the agreed decree in every respect until the United States Supreme Court denied certiorari is the Tullahoma case on January 22, 1965. In February, 1965, the City ceased to make payments to the County. The City is presently holding twenty-two and one-half per cent of all tax equivalent revenue collected in a separate account awaiting the final determination of its obligation.

The Chancellor heard the matter on bill and answer. He held the consent decree valid and binding on the City. He ordered the City to pay Bedford County $18,000.00 in full satisfaction of all claims that the County had for its proportionate share of the tax equivalent revenue received by the City from its electric distribution system prior to January 1, 1963; and that, thereafter, and as long as the City collects tax equivalent revenue from its electric system under the terms of its contract with TVA, the City shall pay to the County annually twenty-two and one-half per cent of all such revenues collected. He ordered the writ of mandamus to issue if it became necessary.

The City has perfected an appeal to this Court and assigned errors.

The substance of the appeal is that the consent decree upon which the suit is based is not binding upon the City. The City has assigned five errors: (1) That there was a total failure of consideration for the contract and also the consent decree based thereon when the United States Court of Appeals determined the City had no legal obligation under the TVA Act, as amended, to share tax equivalent revenue with the County, and the United States Supreme Court approved this interpretation; (2) that the contract and consent decree based thereon re-

sulted from a mutual mistake of the parties as to their rights under the existing law, and did not obligate the City to make further payments to the County; (3) that the City had no legal authority to make its part of the contract which obligated it to pay future installments of tax equivalents to the County; (4) that the contract is illegal because it is against public policy in that it purports to bind the City to make payments in the future without consideration for a period far beyond the terms of office of the officials making it; (5) that the Chancellor was in error by holding the City was obligated to pay the tax equivalent as stipulated in the consent decree.

After full consideration, we are of the opinion the assignments of error are without merit and the decree of the Chancellor should be affirmed.

As to the first assignment, it is insisted by the City the consideration for the future payments to the County was the County's relinquishment of its right to a portion of the tax equivalent revenue. This right was based on the decision of this Court in *Rutherford County v. City of Murfreesboro,* 205 Tenn. 362, 326 S.W.2d 653 (1958), a decision which, the City in its brief states, was mutually understood by the parties when the consent decree was entered. It is then argued when the County's right to have a portion of the revenue ceased by reason of the interpretation of the TVA Act, as amended, in the case of *City of Tullahoma v. Coffee County,* supra, the consideration for the contract failed as to any future payments which the City owes under the consent decree.

Although it is true a failure of consideration is a good defense to an action on a contract, we do not think this principle applies in this case. It is admitted there was sufficient consideration for the agreement at the

time it was implemented into the consent decree. The representatives of the County and City were aware of the facts and the law with respect to them, and in the light of their understanding entered the consent decree. However, the City insists the mere fact that future payments were set forth in the consent decree does not alter the fact the decree was the result of a contract; thus, the City would apply the general law of contracts to the facts of this case. We disagree.

██ A consent decree is a contract made final and binding upon the parties by the approval of the court. *Boyce v. Stanton,* 83 Tenn. 346 (1885).

This Court has held, however, that a consent decree is more than a mere contract. In *Boyce v. Stanton,* supra, the Court said:

> "It is a written judicial contract, duly acknowledged and executed, and conclusive upon the parties. It may be impeached and rescinded for fraud in its procurement; but otherwise it must stand. The parties may not appeal from it, or otherwise correct its errors. They may not recede from it or withdraw their consent to it."

In Gibson's Suits in Chancery, Fifth Edition, Volume 1, Section 619, it is said:

> "A decree by consent is in the nature of a solemn contract; and is, in effect, an admission by the parties that the decree is a just determination of their rights upon the real facts of the case, had such been proved. As a result, such a decree is so binding as to be absolutely conclusive upon the consenting parties, and it can neither be amended, or in any way varied, without a like consent, nor can it be reheard, appealed from, or

reviewed upon a writ of error. The one only way in which it can be attacked or impeached, is by an original bill alleging fraud in securing the consent."

■ Where, as in the present case, a decree by consent has become final and passed beyond control of the court, it becomes conclusive upon the parties and can be amended or vacated only by consent, in the absence of fraud or mistake. *Clinchfield Stone Company v. Stone,* 36 Tenn. App. 252, 254 S.W.2d 8 (1952).

■ We are of the opinion that the defense of a failure of consideration is not available to the City under the facts of this case.

It is next insisted by the City the consent decree resulted from a mutual mistake of the parties as to their rights under existing law and the Chancellor erred in decreeing the City was obligated to make further payments to the County. The mutual mistake referred to is the understanding of the parties of the interpretation of the relevant sections of the TVA Act, as amended in 1940. When the consent decree was entered in 1963, United States Court of Appeals had not handed down its opinion in the case of *City of Tullahoma v. Coffee County,* supra, which changed the interpretation of the TVA Act, as amended in 1940, from that set forth by this Court in *Rutherford County v. City of Murfreesboro,* supra, decided in 1958. Thus, the City argues the reliance of the parties upon the decision in the Rutherford County case constitutes a mutual mistake of sufficient import to vitiate the consent decree.

■ We think there was no mutual mistake under the facts. The parties were fully aware of the facts and the law when the consent decree was entered. The mere fact

the law has changed is no defense. The fact that conditions have changed since the date of the decree, without more is insufficient to vary the terms of the decree. *Clinchfield Stone Company v. Stone,* supra. While it is true the law with respect to the interpretation of the 1940 amendment has changed the parties have not been mistaken as to it. They knew in 1963, when the decree was entered, the state of the law as well as at the present time.

■■ If it be considered a mistake on the part of the parties, the City would not be entitled to any relief. Equity will not relieve against a mistake of law unless there is some other independent equity in favor of the party seeking relief. *Employers Re-Ins. Corp. v. Going,* 161 Tenn. 79, 26 S.W.2d 126 (1930). The City does not claim any such independent equity.

Moreover, the parties knew at the time the decree was agreed upon there was a possibility the Federal Court might change the interpretation of the amendment.

"If, therefore a compromise of a doubtful right is fairly made between parties, its validity cannot depend upon any future adjudication of their right. And, where compromises of this sort are fairly entered into, whether the uncertainty rests upon a doubt of fact or a doubt in point of law, if both parties are in the same ignorance, the compromise is equally binding, and cannot be affected by any subsequent investigation and result." *Trigg v. Read,* 24 Tenn. 529 (1845).

Thus, the City cannot question the validity of the consent decree because of the change in the interpretation of the amendment.

By the City's third and fourth assignments of error the point is made the Chancellor erred in holding the

consent decree obligated the City to pay installments, present and future, of tax equivalents to the County on the ground the governing board of the City had no authority to bind the City beyond its term of office and such contract was against public policy and illegal.

The City contends the amount, if any, to be paid by the City to a County as a tax equivalent, in the absence of a statute, is a matter to be determined by each City governing board, and that no governing board has the authority to bargain away the discretion of future governing boards and bind the City to a contract to pay tax equivalents in future years.

The City relies upon the following rule:

"With respect to the power of a municipal council to enter, in behalf of the municipality, into a contract which will extend beyond the term for which the members of the council were elected, a distinction is drawn based upon the subject matter of the contract—whether legislative or governmental, or whether business or proprietary. Thus, where the contract involved relates to governmental or legislative functions of the council, or involves a matter of discretion to be exercised by the council unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own term, no power of the council so to do exists * * *." 37 Am.Jur., Municipal Corporations, Section 66, page 679.

It is further stated in 37 Am.Jur., Municipal Corporations, Section 66, at page 679:

"But in the exercise of the business powers of a municipal corporation, the municipality and its officers

are controlled by no such rule, and they may lawfully exercise these powers in the same way, and in their exercise the municipality will be governed by the same rules which control a private individual or a business corporation under like circumstances.''

■ A City operates its utilities in a proprietary or individual capacity and not in its legislative or governmental capacity. It is governed, for the most part, by the same rules that control a private, individual or corporate business. *City of Knoxville v. Heth,* 186 Tenn. 321, 210 S.W.2d 326 (1948).

■ A contract made by a city in the course of its operation of a utility is in its proprietary rather than a governmental capacity. *Bybees Branch Water Ass'n v. Town of McMinnville,* 206 Tenn. 372, 333 S.W.2d 815 (1960).

Furthermore, the Private Act which authorized the City to acquire and operate the electric power system also specifically authorized the City to contract with other persons or entities. Under the Act, the City has full authority, ''to enter into any and all contracts with the Tennessee Valley Authority or other entities, persons, firms or corporations, public or private, for the furnishing of electric current to the City of Shelbyville, for use or re-sale, as provided herein, and to enter into any other contracts with any other persons, partnerships, associations, or public or private corporations, which may be deemed necessary or expedient in exercising said powers * *.'' Section 12, Chapter 465, Private Acts of Tennessee, 1939.

The City is authorized under the Act to pay tax equivalents to the State and Bedford County as may be

permitted, provided or required by contract of the City and the Tennessee Valley Authority. Section 22 (d), Chapter 465, Private Acts of 1939.

 Accordingly, it is our opinion the consent decree is legal and binding on the City and does not contravene public policy.

The decree of the Chancellor is affirmed. The costs are adjudged against the City.

BURNETT, CHIEF JUSTICE, DYER and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.