IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2010

**KIMBERLY M. HENDERSON v. GARY N. WILSON**

**Appeal from the Circuit Court for Robertson County**
**No. DR 7894      Ross H. Hicks, Judge**

**No. M2009-01591-COA-R3-CV - Filed February 25, 2011**

A divorced mother of two children filed a petition for child support, alleging that although the father had legal custody of the children and she had been under an order to pay child support to him, the children had actually resided with her for the past six years. The father did not deny that the children had been living with the mother during that entire period. After negotiation, the parties entered into an agreed order, whereby the father was to pay $35,000 in back child support to his former wife. Twenty-three months later, the father filed a Rule 60.02 motion for relief, contending that the agreed order was void as against public policy because it amounted to an impermissible retroactive modification of child support. The trial court denied the father's motion on the ground that it was entitled to presume that parties who are represented by counsel and who submit a signed agreement to the court have taken every pertinent factor into consideration. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Thomas H. Miller, Nashville, Tennessee, for the appellant, Gary N. Wilson.

William R. Underhill, Springfield, Tennessee, for the appellee, Kimberly M. Henderson.

**OPINION**

**I. CHILD CUSTODY AND SUPPORT**

The record of this case is very sparse, but there is no dispute as to the most relevant facts. The resolution of this appeal, therefore, turns solely on legal questions.

Gary Wilson ("Father") and Kimberly Henderson ("Mother") married in 1990. They are the parents of two children. The parties divorced shortly thereafter, and on November 18, 1992, the Robertson County Domestic Relations Court awarded Father custody of the children. The court ordered Mother to pay child support of $50 per week to Father, beginning on November 17, 1992. The record shows that Mother paid a total of $700 to Father under the child support order, all of which was paid in the year 2000.

Sometime in the year 2000, Father filed a petition asking the court to increase Mother's child support obligation. The court dismissed his petition in July of 2000.[1] It is undisputed that after the trial court declined to increase Mother's child support obligation, Father turned custody of the children over to Mother and that they remained in her care throughout the course of these proceedings.

Mother filed a petition to set child support in the Circuit Court of Robertson County on July 5, 2006, followed by an amended petition on October 9, 2006. She stated that Father had a legal duty to support his children and that he had not paid any child support since July 1, 2000. Mother accordingly asked the court to order Father to pay current and retroactive child support as well as medical insurance. Father admitted that he had a legal duty to support his children, but claimed that he had provided some support to the children after they came into Mother's custody.

After nearly a year of litigation, the parties submitted an Agreed Order to the trial court. The terms of the order were that Father would pay Mother retroactive child support in the sum of $35,000, to be liquidated at the rate of $400 per month until the obligation was fully satisfied. The order recited that "[t]his amount equals or exceeds child support according to the Uniform Child Support Guidelines and is for the benefit of the parties' children." The trial court entered the Order on June 29, 2007. The Agreed Order was signed by the trial judge and by the attorneys for both parties. Father made child support payments in accordance with the Agreed Order for sixteen months. He stopped making payments after October of 2008.

On February 10, 2009, Mother filed a petition for civil contempt against Father, asking the court to enter a judgment against him for his support arrearage. Shortly thereafter, Father secured new counsel, and he responded to Mother's petition on March 16, 2009, by filing his own petition for criminal contempt against Mother. He did not deny that he had stopped paying child support under the Agreed Order, but he noted that the court never

_____

[1]The appellate record does not include the divorce decree, Father's petition to modify support or the trial court's order denying that petition. Our account necessarily comes from the parties' pleadings and from their briefs on appeal.

entered an order terminating Mother's obligation to pay him child support of $50 per week. Father therefore argued that Mother's obligation continued and that her arrearage under the earlier order amounted to $42,000. He accordingly asked that Mother be held in criminal contempt and that he be awarded a judgment for the arrearage. Neither of these contempt petitions forms a part of this appeal.

The order that is the subject of this appeal arose from Father's motion for relief from a final judgment under Tenn. R. Civ. P. 60.02, which was filed on May 13, 2009.[2] Father argued that the Agreed Order of June 29, 2007, was void under Tenn. R. Civ. P. 60.02(3) because it contained a retroactive modification of child support in violation of public policy. In the alternative, he argued that the court should relieve him from the judgment, by finding that it had been totally "satisfied, released or discharged" under Tenn. R. Civ. P. 60.02(4) through an offset against Mother's unpaid child support obligation arising from the trial court's earlier order of November 18, 1992.

In support of Father's argument, he attached as exhibits to his motion his 2007 income tax return, a child support worksheet based on support for one child[3] which showed that under the guidelines Father's presumptive child support obligation was $632 per month, a record of all of Mother's payments under the child support order of November 18, 1992, and Father's calculation of statutory interest owed on the unpaid portion of that obligation.

Mother denied that there was any reason to find the Agreed Order void. She also argued that if Father had a valid claim for unpaid child support, he should have raised it in his response to Mother's petition of July 5, 2006, to set child support, as a compulsory counterclaim under Tenn. R. Civ. P. 13.01. Mother noted that at the time of the earlier proceeding Father was aware of the facts upon which he based his claim, and that a party is not entitled to relief under Rule 60 for failing to assert such a claim at an appropriate time.

The hearing on Father's Rule 60 motion was conducted on June 3, 2009, after which the court denied the motion. The trial court ruled that the Agreed Order was not void under Tenn. R. Civ. P. 60.02(3). It further stated

> . . . that a trial court is entitled to presume that if litigation is resolved by agreement, when the parties are represented by counsel and discovery is

_____

[2]On that same date, Father non-suited his contempt claim and asked the court to allow him to go forward with his petition, in order to pursue a judgment for child support arrearages.

[3]One of the parties' children apparently reached her majority and aged out of child support prior to the proceedings at issue.

available, that they took into account all issues at that time including satisfaction, release and/or discharge of the underlying judgment under Rule 60.02(4) and that the doctrine of res judicata would apply and the Respondent/Father's Motion should therefore be denied.

This appeal followed.

## II. APPLICABLE PRINCIPLES

The trial court denied Father's Tenn. R. Civ. P. 60.02 motion, and our review of that decision is limited to whether the trial court abused its discretion. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000); *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993); *Delong v. Vanderbilt University*, 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005). Our Supreme Court has discussed the abuse of discretion standard, stating,

> "a trial court's ruling will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

Tennessee Rule of Civil Procedure 60.02 allows a trial court to relieve a party from a final judgment "on motion and upon such terms as are just." Relief under the rule is considered "an exceptional remedy" and not a routine one. *Nails v. Aetna Ins. Co.*, 834 S.W.2d 275, 294 (Tenn. 1992); *Fielder v. Lakesite Enters. Corp.*, 871 S.W.2d 157, 159 (Tenn. Ct. App. 1993). The purpose of Rule 60 is to alleviate the effect of an oppressive or onerous final judgment, while also balancing the competing interests of justice and finality.

*Banks v. Dement Constr. Co., Inc.*, 817 S.W.2d 16, 18 (Tenn. 1991); *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 231 (Tenn. Ct. App. 2000).

In examining the purpose of Tenn. R. Civ. P. 60.02, our Supreme Court has said:

-4-

"Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules...." Because of the importance of this "principle of finality," the "escape valve" should not be easily opened.

*Banks,* 817 S.W.2d at 18 (quoting *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn.1991)).

Rule 60.02 does not "permit a litigant to slumber on her claims and then belatedly attempt to relitigate issues long since laid to rest." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990). Although Rule 60.02 gives the courts broad authority, "this power 'is not to be used to relieve a party from free, calculated and deliberate choices it has made.'" *Federated Ins. Co.,* 18 S.W.3d at 625 (quoting *Banks*, 817 S.W.2d at 19).

Related to the prohibition on using Rule 60 to relieve a party from a deliberate choice made by the party during litigation are well-settled principles regarding the setting aside of a consent judgment or agreed settlement. As stated above, Rule 60 relief should be granted sparingly in deference to the principle of finality. That principle is particularly important in an attempt to set aside an agreed order disposing of an action.

Consent decrees, compromise and settlement agreements, and agreed orders are favored by the courts and represent the achievement of an amicable result to pending litigation. A consent decree signed by the parties involved has been described as "about the most binding of agreements that can be made." *Bringhurst v. Tual*, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980) (citing *Smelcer v. Broyles*, 465 S.W.2d 355, 356 (Tenn. 1971)); *Boyce v. Stanton*, 83 Tenn. 346, 375-76 (1885)). A consent decree is

> . . . a written judicial contract, duly acknowledged and executed, and conclusive upon the parties. It may be impeached and rescinded for fraud in its procurement; but otherwise it must stand. The parties may not appeal from it, or otherwise correct its errors. They may not recede from it or withdraw their consent to it.

*Boyce*, 83 Tenn. at 375-76.

In order to set aside or alter a consent decree, a party must show that the consent decree was entered through fraud or mistake. In the absence of fraud or mistake, a consent decree will stand as made unless it is vacated in the same manner as it was procured: by consent. *State ex rel. Bedford County*, 415 S.W.2d 139, 144 (Tenn. 1967); *Bringhurst*, 598 S.W.2d at 622.

Accordingly, Rule 60.02 generally should not be used to relieve a party from his free, calculated, and deliberate choice in signing a settlement agreement. *Lethcoe*, 18 S.W.3d at 625; *Tyler v. Tyler*, 671 S.W.2d 492, 495 (Tenn. Ct. App. 1984). In addition, the failure to take legal steps to protect one's own interests precludes relief under Rule 60.02. *Hopkins v. Hopkins*, 572 S.W.2d 639, 640 (Tenn. 1978); *Bivins v. Hospital Corp. of America,* 910 S.W.2d 441, 448 (Tenn. Ct. App. 1995). In *Lethcoe*, the choices referred to were: (1) to settle rather than litigate; (2) not to insist on other terms in the settlement agreement; and (3) not to appeal. Because a party "remains under a duty to take legal steps to protect his own interests," *Banks*, 817 S.W.2d at 19, these actions and inactions precluded relief under Rule 60.02(5). The same principle was applied in *Day v. Day*, 931 S.W.2d 936 (Tenn. Ct. App. 1996), to a decision not to appeal. "Rule 60 is not a substitute for appeal and motions under the rule have been denied when made to avoid a party's decision to settle the litigation or forego an appeal." 11 Charles Alan Wright, et al., Federal Practice and Procedure, § 2851 (2d ed. 1987).

### III. Grounds for Relief Under Rule 60

Rule 60.02 sets out a list of possible grounds that might justify relief from a final judgment. These are "(1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, . . . "

Father's arguments are based on sections (3) and (4). He asserts that the judgment of the trial court is void or, in the alternative, that it has been satisfied. We will discuss each of these arguments in turn.

First, Father argues that the trial court should have granted his Rule 60.02(3) motion because the Agreed Order "was void as against public policy in that it impermissibly awarded retroactive child support."

The Tennessee Supreme Court has clearly stated the test for determining whether a judgment is void:

> . . . where the Court has general jurisdiction of the subject matter and jurisdiction over the parties, and where the Court's decree of divorce is not "wholly outside of the pleadings," a divorce decree will not be deemed void.

It follows that absent such a *prima facie* void decree, a flaw in procedure will not render a decree void.

*Gentry v. Gentry*, 924 S.W.2d 678, 681 (Tenn. 1996).[4]

In *Gentry*, the Court relied upon the following excerpt from *Gibson's Suits in Chancery*:

The Chancery Court is a Superior Court of general Equity jurisdiction, and all of its decrees are presumed to be valid, and this presumption is conclusive against collateral attack, unless it affirmatively appears, on the face of the record itself: (1) that the Court had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his privies.

A decree is absolutely void if it appears on the face of the record itself either that the Court had no general jurisdiction of the subject matter, or that the decree is wholly outside of the pleadings, and no consent thereto appears. A decree is void as to any person shown by the record itself not to have been before the Court in person, or by representation. A decree not *prima facie* void is valid and binding, until it is either (1) reversed by the Supreme Court, or by the Court of Appeals; or (2) is set aside on a complaint filed to impeach it.

*Gentry*, 924 S.W.2d at 680 (citing William H. Inman, *Gibson's Suits in Chancery* § 228 at 219-20 (7th ed. 1988)). *See also Tate v. Ault*, 771 S. 416, 419 (Tenn. Ct. App. 1989) (holding that a judgment is void "only if the court rendering it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process of

---

[4]In the case before us, Father's Rule 60 motion constitutes a direct attack on the prior judgment, since the motion was "brought for the very purpose of impeaching or overturning a judgment." *Gentry* at 680 n.3 (quoting *Turner v. Bell*, 279 S.W.2d 71, 75 (Tenn. 1955)). However, the type of proceeding in which a challenge to the validity of a judgment is raised is not determinative of whether the judgment is void, voidable, or valid. Rather, as the Court in *Gentry* explained, the opposite analysis applies. If a judgment is void, it may be attacked collaterally as well as directly. However, a merely voidable judgment may only be attacked directly. *Gibson's* at § 228. Consequently, the standard announced by the Supreme Court for determining whether a judgment is void is applicable to Father's attack on the prior judgment.

law.")[5]

Father has not asserted that the June 29, 2007 Agreed Order is void because the trial court lacked subject matter jurisdiction or personal jurisdiction over him or because the relief granted in the order was outside the pleadings. Instead, he asserts that the order is void because it violates public policy.

As Father suggests, a judgment may also be determined to be void if it violates public policy, and certain judgments involving child support fall into that category. For example, in *Witt v. Witt,* 929 S.W.2d 360 (Tenn. Ct. App. 1996), this court made such a determination, holding that ". . . agreements, incorporated in court decrees or otherwise, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy as established by the General Assembly." *Witt,* 929 S.W.2d at 363. In that case, the parties had entered into a marital dissolution agreement in which the mother waived all child support, and both she and her husband acknowledged that the child was not his child. A subsequent Rule 60 motion by mother was granted, setting aside the prior court approval of the MDA as it related to paternity. *Id*. at 361-62. This court affirmed, holding that such an agreement is void. *Id*. at 363. *See also State ex rel. Wrzesniewski v. Miller*, 77 S.W.3d 195, 197 (Tenn. Ct. App. 2001) (setting aside an agreed order relieving the mother from child support and stating the guidelines did not apply, in part in reliance on *Witt*).

Father's public policy argument is based on several purported errors or omissions in the Agreed Order. He contends that these deficiencies, taken together, constitute a violation of strong public policies of the state in matters involving the support of minor children, including the proper use of child support guidelines, procedure for deviating from those guidelines, and retroactive modification of child support. Father asserts that the amount of support stated in the Agreed Order deviates from the guidelines, in that his actual child support obligation for the time period covered by the Agreed Order would have been less; that this upward deviation was not explained or justified in the Agreed Order; and that the Agreed Order constituted an impermissible retroactive modification of child support.

In analyzing these arguments, it is important to remember that the Agreed Order Father seeks to void settled a dispute over child support Mother had alleged was due before

---

[5]*Pittman v. Pittman*, 1994 WL 456348 (Tenn. Ct. App. 1994) presents an example of an order that is void because of due process considerations. We held that the husband in that case was entitled to relief under Rule 60.02(3) from a five-year old alimony award because the wife did not ask for spousal support in her complaint for divorce. The husband, who lived in another state, therefore did not receive notice that such a judgment might be rendered against him, and he did not contest the wife's motion for default judgment. We found that because of the lack of notice the husband was deprived of constitutional due process, rendering the support order void.

the Order. The provision Father challenges did not set prospective child support.

As discussed earlier in this opinion, Tennessee courts have determined that agreements, including agreed orders, which relieve a natural or adoptive parent of his or her obligation to provide child support are void as against public policy. *Witt v. Witt,* 929 S.W.2d at 363. Rule 60.02 relief from agreements approved by the court dealing with child support has been limited to the situation described in the *Witt* holding. We have dealt with other claims for Rule 60.02 relief that are similar to those made by Father herein.

In *Spruce v. Spruce*, 2 S.W.3d 192 (Tenn. Ct. App. 1998), this court found that a mother had not shown that she was entitled to relief under Rule 60.02 from the child support provisions in a marital dissolution agreement, adopted 41 months earlier by the trial court, when she argued that the agreement/judgment did not comply with the child support guidelines and was an improper downward deviation from the presumed amount. This court held that both parties consented to the child support agreement based on existing facts known to both of them. *Id.* at 194. Consequently, the mother's real complaint was that the parties and, then, the approving trial court had improperly applied the law. *Id.* at 195. Because ignorance of the law is not a proper ground for relief under Rule 60.02, the mother's motion based upon an alleged improper deviation from the guidelines was found to be without merit. *Id.*

The same reasoning was used in *Haas v. Haas*, No. 02A01-9709-CV-00241, 1998 WL 599529 (Tenn. Ct. App. September 11, 1998), to reverse the grant of a Rule 60.02 motion based on allegations of the parties' mistaken application of the child support guidelines. *See also Day v. Day*, No. M2001-01624-COA-R9-CV, 2002 WL 13036 (Tenn. Ct. App. January 4, 2002) (applying the mistake of law reasoning of *Spruce* to a Rule 60.02 motion to set aside an agreed judgment on child support).

In *Woodard v. Woodard*, No. M2004-01981-COA-R3-CV, 2006 WL 1343209 (Tenn. Ct. App. May 16, 2006), this court considered an action by the State on behalf of the mother that sought to set aside a parenting plan and its child support provisions that had been approved by the court. We applied two basic principles, familiar in the context of Rule 60 motions to set aside prior child support orders or agreements. First, when the action is not a direct appeal of a parenting plan or agreed order setting support, the threshold for setting it aside on the ground it is void or voidable is very high. 2006 WL 1343209, at \*4.

Second, the principle to be applied in such situations is that set out in *Berryhill v, Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000) and *Witt v. Witt*, 929 S.W.2d at 363, which is that agreements incorporated into decrees that purport to relieve a parent of his or her child support obligation are void as against public policy, as are agreements not to seek future

increases in child support. *See Corbin v. Corbin*, No. W2008-00437-COA-R3-CV, 2009 WL 454134 (Tenn. Ct. App. February 24, 2009)(examining a number of prior cases involving allegations that prior judgments regarding child support were void).

We can find no authority, nor has Father provided any, that would justify granting a Rule 60.02 motion to set aside an agreed order regarding child support because a parent agreed to pay more than he or she was required to pay. We cannot conclude that a parent's choice to pay more than the minimum required by law is against the public policy of this state. Thus, assuming *arguendo* that Father's contentions that the Agreed Order was based on amounts of child support that were greater than the amount he would have been obligated to pay are correct, he is still not entitled to Rule 60.02 relief on the basis that he agreed to, and the court approved, a settlement that was not based strictly on the guidelines.

Additionally, as regards Father's other public policy arguments, in *Woodard*, this court noted, "As this is not a direct appeal of the 2001 Parenting Plan, it is immaterial that the record does not provide a satisfactory explanation justifying a deviation from the guidelines . . ." 2006 WL 1343209, at *4. Similarly, this court has held that a trial court's failure to make written findings for deviating from the child support guidelines when approving a settlement by the divorcing parties "is a mere failure of procedural fidelity," which does not justify setting aside a final order after the time for direct appeal has passed. *Frazier v. Frazier,* 72 S.W.3d 333, 337(Tenn. Ct. App. 2002). *See also Cook v. Cook*, No. M2005-02725-COA-R3-CV, 2007 WL 295238, at *3 n.7 (Tenn. Ct. App. Feb. 1, 2007) (stating that the failure of a trial court to provide written explanation for deviation from guidelines will not operate to void a final order).

When a party seeks to set aside a judgment under Rule 60.02, the burden is on that party to prove that he or she is entitled to relief. *Spruce*, 2 S.W.3d at 194; *Steioff v. Steioff*, 833 S.W.2d 94, 97 (Tenn. Ct. App. 1992); *Brumlow v. Brunlow*, 729 S.W.2d 103, 106 (Tenn. Ct. App. 1986); *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 186 (Tenn. Ct. App. 1985). Father has failed to meet that burden on the Rule 60.02 ground of voidness.

In addition to asserting that the Agreed Order should have been set aside because it was void, Father also argues that the $35,000 he obligated himself to pay under the Agreed Order should be offset by Mother's failure to pay child support to him under the trial court's order of November 18, 1992, which obligation, he asserts, continued to be in effect until modified by the Agreed Order. According to Father, setting off Mother's unpaid child support against the $35,000 he agreed to pay in would totally wipe out his obligation. [6]

---

[6]Father calculates that Mother's cumulative obligation, accrued both before and after Father

(continued...)

In making this argument, Father relies on Tenn. R. Civ. P. 60.02(4) which provides for relief on the ground that "the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated." That rule does not provide relief for Father in these circumstances. For the rule to apply, Father would have to show that he has satisfied the $35,000 judgment arising from the Agreed Order. If that were the situation, he would be entitled to relief from the Agreed Order.

However, that is not the situation before us. As part of Mother's July 2006 petition to set child support, the parties litigated for a year and then reached an agreement, including the agreement that Father owed $35,000 in past child support for the time the children were in Mother's custody. He agreed to pay that amount and to a judgment against him in that amount **in settlement of the pending litigation**.

While Father could have raised the outstanding child support order requiring Mother to pay him support as a defense to Mother's petition of July 5, 2006 to set child support, and while he could have made the setoff argument at that time, he chose not to do so. In order to avoid a multiplicity of suits,[7] Rule 13.01 of the Tennessee Rules of Civil Procedure requires that a party "state as a counterclaim any claim, other than a tort claim, which at the time of serving the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . ." Clearly, Father's claim that Mother owed him past due child support should have been raised, if at all, before the Agreed Order was entered into.

The Agreed Order does not refer to the earlier child support order, and the record is silent as to how the parties arrived at the figure of $35,000.[8] Be that as it may, Father cannot claim that he was unaware of the existing child support order at the time he entered into the Agreed Order. Neither can he now avoid the enforcement of the Agreed Order that he entered into that settled Mother's claim against him.

---

[6](...continued)
surrendered custody of the children to her, amounted to $47,452. He further contends that when statutory interest of 12% per annum is added to the unpaid child support, Mother's obligation grows to $86,602, thereby totally wiping out his own obligation and supporting a judgment for him and against Mother in the amount of $51,602.

[7]*See* Advisory Commission Comments 13.01.

[8]In her appellate brief, Mother suggests a possible basis for the agreed-upon sum. Using the child support worksheet submitted by Father, she calculates that his presumptive child support obligation of $632 per month for one child between July 1, 2000 and June 29, 2007 would have amounted to $52,456. She also calculates that her own court-ordered obligation under the same time period for both children was $16,200 and that offsetting the one obligation against the other would result in a figure very close to $35,000.

As set out earlier, a consent decree is considered "about the most binding of agreements that can be made." *Bringhurst v. Tual*, 598 S.W.2d at 622, and a party seeking to set aside an agreed order settling litigation has a very high burden. An Agreed Order that is not void is valid and it is binding upon the parties. *See Underwood v. Zurich Ins. Co.*, 854 S.W.2d at 97; *Bacardi v. Tennessee Board of Podiatry*, 124 S.W.3d 553, 562 (Tenn. Ct. App. 2003). The reason is expressed by a well-founded maxim of equity: *volenti non fit injuria* (he who consents to what is done cannot complain of it). *Gardiner v. Word,* 731 S.W.2d 889, 893 (Tenn. 1987). Thus, "[s]uch an order is conclusive upon the consenting parties, and can neither be amended nor in any way varied without like consent; nor can it be reheard, appealed from or reviewed upon writ of error." *Nance v. Pankey*, 880 S.W.2d 944, 946 (Tenn. Ct. App. 1993).

Rule 60.02 is not a substitute for appeal, and motions made pursuant to that rule are generally denied when they are made to avoid a party's decision to settle the litigation. That is exactly the situation here. Father gave his assent to the Agreed Order with full knowledge of all the relevant facts. He has failed to demonstrate that he is entitled to relief from that Agreed Order under Tenn. R. Civ. P. 60.02.

Since Father is not entitled to relief under either of his theories, we affirm the trial court.

## III.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Robertson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Gary N. Wilson.

_____
PATRICIA J. COTTRELL, JUDGE