Rutherford County, Appellee,

*v.*

City of Murfreesboro, Tennessee, Appellant.

(*Nashville,* December Term, 1958.)

Opinion filed July 27, 1959.

ALFRED B. HUDDLESTON, Murfreesboro, EDWIN F. HUNT, Nashville, HOWARD, DAVIS, BOULT & HUNT, Nashville, of counsel, for appellant.

RIDLEY & BOULDIN, Murfreesboro, for appellee.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Subsequent to our disposition of a case of the same style as the instant one which is reported in 202 Tenn. 455, 304 S.W.2d 635, which case we decided adversely to the claim of said County, the present bill was filed. The

demurrer of the City was overruled by the Chancellor and the suit is here on a discretionary appeal from the decree of the Chancellor.

The determinative question in this case is the proper construction of the 1940 amendment to Sec. 13 of the TVA Act (16 U.S.C.A. sec. 831*l*). This amendment was referred to and urged in support of the County's claim in the prior suit but was properly held to be inapplicable to the contract existing at that time between the City and TVA which antedated this amendment.

It appears from the bill that on the 23rd day of April, 1957, the City terminated the contract involved in the prior suit and entered into a new contract to continue for a period of 20 years unless sooner mutually terminated.

Said contract provides in substance that it may place in its general fund to be used for municipal purposes only an amount in lieu of taxes representing a fair share of the cost of government properly to be borne by such system.

Then under the head of "Use of Revenues" after providing for the payment of operating expenses, interest, principal and sinking fund payments, reasonable reserves for renewals, replacements, contingencies and cash working capital, it then provides for *tax equivalent payments* into municipality's general funds, as more particularly provided in an attached schedule of terms and conditions.

Under Condition 2(b) of said schedule, the material provision is:

"It shall be the responsibility of Municipality to provide for such distribution as may be required by law or as it deems appropriate under the provisions of Sec. 13 of the TVA Act to the State, counties and other municipal corporations in which it operates of any tax equivalent so collected by Municipality in lieu of State, County and other municipal taxes. * * *''

For the convenience of the reader, we again quote said 1940 amendment as follows:

"Nothing herein shall be construed to limit the authority of the Corporation in its contracts for the sale of power to municipalities, to permit or provide for the resale of power at rates which may include an amount to cover tax-equivalent payments to the municipality in lieu of State, county and municipal taxes upon any distribution system or property owned by the municipality, or any agency thereof, *conditioned* upon a *proper* distribution *by the municipality* of any amounts collected by it in lieu of State or county taxes upon any such distribution system or property; it being the intention of Congress that either the municipality or the State in which the municipality is situated shall provide for the *proper* distribution to the State and county of any portion of tax equivalent so collected by the municipality in lieu of State or county taxes upon any such distribution system or property.''

The Chancellor in his usual clear style held that under said amendment and the contract above referred to the municipality was obligated to make proper distribution to the County of the tax equivalent payments received by it from the revenues which had gone into its general fund under the provisions of the above quoted instruments.

The only assignment of error is that said bill, contract and applicable law does not entitle said County to any legal or equitable interest in said revenues paid into the general fund of said municipality.

All the argument in support of said assignment revolves around the following three propositions of law appearing in the brief:

"1. Section 10 of the Tennessee Valley Authority Act of 1933 authorizes TVA 'to include in any contract for the sale of power such terms and conditions, including resale rate schedules * * * as in its judgment may be necessary or desirable for carrying out the purposes of this chapter * * *'. U.S.C.A., Section 831i.

"2. The Act of 1940, amendatory of the TVA Act, related only to Section 13 thereof and did not amend or restrict, nor purport to amend or restrict, Section 10 of the TVA Act. Act of June 26, 1940, c. 432, Sec. 39; 54 Stat. 626, 16 U.S.C.A., Sec. 831l.

"3. Said amendatory act of 1940 does not require, and may not reasonably be construed to require, that when a city takes from its electric distribution system revenues and places in its general fund an amount in lieu of county taxes, such city must restore to the county the taxes lost. 16 U.S.C.A. Sec. 831l; Appendix A attached hereto (Committee Report)."

We think it perfectly clear that the 1940 amendment means, if we may be permitted to paraphrase, that TVA has the discretion in making such contracts with municipalities either to include a provision for tax equivalent payments as therein described or to omit any such provision; but if such a provision be included, it

must be conditioned upon a proper distribution by the municipality of any such amounts collected in lieu of State or County taxes upon any such distribution system or property. If this is not the proper construction of that amendment, then it must be said that Congress used quite a good many words unnecessarily and pointlessly, because otherwise under Sec. 10 of the TVA Act, the Authority already had unlimited power to include such terms for resale as might be necessary or desirable for carrying out the purposes of the Act.

As we see it, the only discretion is that which is vested in TVA whether to include the provision for payment of tax equivalents, but if such provision be included, it is on condition that the municipality make proper distribution to the respective governmental units. This is made abundantly clear by the language following the semicolon.

A part of the argument in behalf of the City is that such a view constitutes an invasion by the Federal system of the sphere of the rights and powers of the states, thereby raising a serious constitutional question.

We think not. It is true that Congress has absolutely no right to enact a statute, without more, which requires a municipality to make any payments to taxing authorities in which the municipal power system operates, but it does have the power to provide the terms under which a municipality or any other individual or corporation, public or private, may purchase its power for resale purposes, in order that Congress may enable TVA to carry out its purposes, among others, of providing low cost power.

■ It may be stated this way. No one has a right to purchase power for resale from TVA, but if it is desired to contract with TVA for power, it must be upon terms agreeable to TVA that are within the powers granted by Congress and such as are consistent with and directed toward the accomplishment of the overall object of TVA, as expressed in the Acts of Congress.

■ It would seem odd that, with nothing in the original TVA Act of 1933 purporting to deal with a proper distribution by a municipality of any tax equivalents collected by it in lieu of State and county taxes upon such distribution system, Congress should see fit in 1940 to add this amendment, unless Congress intended to put the State and county in the same category as a municipality with reference to receiving tax equivalent payments in lieu of the lost taxes which would otherwise be assessable and collectible upon privately owned systems. It is a matter of common knowledge that in many counties such tax losses would otherwise be severe.

■ With this thought in mind, we think that the language "conditioned upon a *proper* distribution" can only mean that the municipality must distribute these tax equivalents fairly and as a replacement of lost taxes as among the several governmental units; otherwise the municipality would be allowed to make a profit on the operation by collecting these tax equivalents and then retaining all of them for itself.

The Chancellor cited and quoted from *Tennessee Valley Authority v. Polk County,* D.C.Tenn., 68 F.Supp. 692, not because the case presented the same question of law as in the instant case but to show the general intent of Congress by this 1940 amendment to replace to the coun-

ties the lost taxes; it would be inconsistent to hold at the same time that Congress by this amendment had a different intention where contracts with municipalities are involved.

■ In behalf of the City it is further argued that Condition 2(b) of the schedule quoted supra, is an interpretation by the TVA officials in making this contract with the City of Murfreesboro that is contrary to what we have hereinabove stated. If so, we think theirs is erroneous. We rather believe, however, that it is a recognition of the responsibility of the municipality to make the distribution as required by the amendment and that the words immediately following the opening words of the sentence are generalizations brought about by some uncertainty in the minds of the officials as to the meaning of the part of the 1940 amendment following the semicolon.

Therefore, disagreeing as we do with appellant's Proposition of Law No. 3, we think it evident that the effect of the 1940 amendment to Sec. 13 of the TVA Act by necessity restricted the authority of TVA granted in Sec. 10 of the Act. Elaboration is unnecessary in view of what we have said above.

The decree of the Chancellor is affirmed.