**CITY OF TULLAHOMA, TENNESSEE, Plaintiff,**

v.

**COFFEE COUNTY, TENNESSEE, Defendant.**

Civ. A. No. 510.

United States District Court
E. D. Tennessee,
Winchester Division.
April 2, 1962.

R. C. Robertson, Charlie F. Hickerson, Tullahoma, Tenn., Edwin F. Hunt, Nashville, Tenn., for plaintiff.

Davis W. Shields, III, Gerald L. Ewell, Harry B. Gilley, Manchester, Tenn., for defendant.

NEESE, District Judge.

The plaintiff City holds in its general fund a sum of money which the defendant has demanded be paid over to the County. The City refused this demand and filed a complaint seeking a declaration of the respective rights of the parties under Section 13 of the Tennessee Valley Authority Act.[1] The defendant

1. 48 Stat. 66, Act May 18, 1933, as amended, Act June 26, 1940, 54 Stat. 626, 16 U.S.C. § 831 et seq.

County has now also asked for a declaration of the rights of the parties, and similar controversies in other proceedings are being held in abeyance awaiting the final determination of this action. Section 13 provides for financial assistance in lieu of taxes to those states and local governments in which T.V.A. power operations are carried on and in which public ownership of properties previously subject to state and local taxation has been acquired as will appear in more detail *infra.*

The amount under consideration was received by the plaintiff City from its utilities board in equal monthly installments in the year 1959 under the terms and provisions of a power contract between the plaintiff City and the Tennessee Valley Authority, a United States corporation. Section 10(c) of the schedule of terms and conditions thereof provides for payments in lieu of taxes, enabling the plaintiff City to take from its utilities board's revenues or funds for the general fund of the municipality an amount in lieu of taxes "representing a fair share of the cost of government properly to be borne by the plaintiff City's electric distribution system." Item (2) of this subsection is pertinent here:

"(2) To the extent surplus revenues are available after the satisfaction of all items set forth in subsections (a) through (d) of section 6 of the Power Contract, Municipality may take from the electric department revenues or funds for the general funds of Municipality an amount calculated by applying the prevailing county and State tax rates to the value of the electric system; provided, however, that if the Municipality shall, directly or indirectly, and voluntarily or otherwise, make any payment or payments out of electric system revenues or funds to the State and/or any political subdivision thereof other than Municipality in satisfaction of a claim or obligation for taxes or payments in lieu of taxes, * * * then and in such event, and whether or not such payment or payments be measured by taxes or tax values at any time levied or assessed, the county and/or state tax equivalents to which Municipality would otherwise be entitled under this subsection (2) shall be reduced by the amount of such payment or payments; and provided further, that no such payment shall operate to reduce the tax equivalent to which Municipality is entitled under subsection (1) immediately preceding.

"It is understood and agreed, however, that Municipality shall not, in respect of any year, voluntarily make or agree to make any payment or payments of the kind referred to in this subsection when such payment or payments, either separately or in conjunction with all other similar payments in respect of that year, voluntary or otherwise, would exceed the amount derived by applying the prevailing county and state tax rates to the value of the electric system."

So it was contemplated by these contracting parties that, to the feasible extent in each given year, the plaintiff City's electric distribution system would bear its fair share of the cost of municipal, county and state government within the State of Tennessee, Coffee County and the City of Tullahoma, although there is nothing implicit in the language of the contract rendering mandatory such payments in lieu of taxes by the City to either the State or County. The contract even provides for the making of voluntary and indirect payments by the plaintiff City to the State and County, whether measured by taxes or tax values levied or assessed or not, provided such payments are not more than the equivalent of the prevailing county and state tax rates.

It is clear that the plaintiff City is to determine under the contract what distribution, if any, it will make of the proceeds received under section 10(c) (2) quoted above. Even if it retains all of the fund received under said subsec-

tion 10(c) (2), its revenue received under section 10(c) (1) is not affected thereby.[2] By like token, if the plaintiff City distributes all or a part of the fund received under said subsection 10(c) (2) to the State or the defendant County, its own expendable revenues are reduced accordingly, and it cannot recoup such amount or amounts by further transfers to its general 'fund from the coffer of its utilities board.

For the year 1959 the plaintiff's utilities board paid into the general fund of the City an aggregate sum of $27,892.76 under section 10(c) (2) of the contract. There was no formal action on the part of either the City authorities or the City's utilities board with reference to the respective proffering and acceptance of these payments. The superintendent of the utilities board testified that his agency computed the annual amount of the state and county tax equivalent as agreed in the contract and "just automatically" paid the City one-twelfth (½₂) of the total amount each month "as called for by the contract."

The defendant County took the position that as the amount of this fund was computed on the basis of the Coffee County tax rate, section 13 of the Tennessee Valley Authority Act compels its distribution to the defendant County by the City. The plaintiff rejected this contention, asserting that under a proper construction of section 13, this fund belonged to the City, and its distribution to the County was only permissive and not mandatory under the provisions of the statute.

The plaintiff City was therefore placed in a position where, if it applied the fund to general municipal purposes, it was subject to the possibility of a suit by the County for recovery of the fund, possibly after commitment or disbursement of the proceeds. Under these circumstances the plaintiff City filed the present action for a declaration of its rights pursuant to the Federal Declaratory Judgment Act.[3] There is little dispute as to any of the facts, and the question presented is simply a question of law as to the proper construction of the federal statute.

■ The amount of money involved is not in controversy. The defendant demands that the plaintiff pay it the $27,892.76 allegedly due. The plaintiff denies that this obligation exists. This situation presents a substantial controversy between parties having adverse legal interests in which the relief sought is a reality requiring immediate determination. Such circumstances warrant the issuance of a declaratory judgment. Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

■ "According to the tenor of section 13 of the T.V.A. Act the object of the Congress was to render financial assistance to states and local governments in lieu of taxation. This is particularly reflected in the hearings before the appropriate committees which preceded the passing of the 1940 Amendment which has become said section 13." Tennessee Valley Authority v. Polk County, D.C. Tenn., 68 F.Supp. 692, 694.

The plaintiff owned its electric distribution system long before the availability of wholesale electric power from the T.V.A., so there has been no actual tax loss to the state and county in which the distribution system and properties are

---

**2.** The language of section 10(c) (1) of the schedule of terms and conditions of the contract between the plaintiff City and the Tennessee Valley Authority is as follows: "10 (c) (1) To the extent surplus revenues are available after the satisfaction of all items set forth in subsections (a) through (d) of section 6 of the Power Contract, Municipality may ·take from the electric department revenues or funds for the general funds of Municipality an amount calculated by applying the prevailing municipal property tax rate to the value of the property used in electric operations within the municipal limits."

**3.** 36 Stat. 1087, Act March 3, 1911, as amended, 48 Stat. 955 June 14, 1934, 28 U.S.C. § 400 [now 28 U.S.C.A. §§ 2201, 2202].

located; however, the City's electric system and properties have always been, and still are, *subject* to state and local taxation if the same ever become privately owned. The purpose of these T.V.A. tax equivalents is to provide payments for a fair share of the cost of government properly to be borne by the plaintiff's electric distribution system, and the fact of its extended public ownership does not diminish the burden resting on the state and local governments to bear the respective costs of government.

The Tennessee Valley Authority is authorized to impress on contracts such as this one limitations as to the plaintiff's use of revenues acquired by its utilities board. 16 U.S.C. § 831i, provides, *inter alia*, that the Tennessee Valley Authority " * * * Board is authorized to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of this chapter * * *." One of the basic purposes of the chapter is declared to be the " * * * domestic and rural use at the lowest possible rates * * * of electricity." 16 U.S.C. § 831j, It is commendable, that the T.V.A. directors would insist on the inclusion of a sufficient increase in resale power rates in its wholesale power contracts with municipal distributors to make possible the bearing by such distribution systems of their fair share of the costs of local governments wherein the systems are located. This is as it should be.

In considering the present question it should be remembered there are three (3) types of T.V.A. tax equivalent payments in lieu of local taxes. The first of these is the direct payment of such equivalents by the Tennessee Valley Authority to certain states and certain counties therein in which T.V.A. power operations are carried on and in which the Authority has acquired properties previously subject to state and local taxation. This Court dealt directly with this first type of payments in Tennessee Valley Authority v. Polk County, supra, but this type is not at issue in the case at bar.

The second type of such payments is represented by section 10(c)(1) of the schedule of terms and conditions of the contract of July 1, 1947, (effective as of January 1, 1949) between the plaintiff and the T.V.A. See footnote 2, supra. This type of tax equivalent payment produces a fund from available surplus revenues from the electric distribution system's operation to replace municipal revenues which otherwise would be lost to the municipality by virtue of the public ownership of the system. Likewise, this second type of payments is not at issue here.

The third type of such payments is typified by section 10(c) (2) of the schedule of terms and conditions of the said contract between the plaintiff and the T.V.A. See the quoted language supra. It is this third type of T.V.A. tax equivalent payments with which the Court is presently concerned.

■ To determine and effectuate the legislative intent is the primary concern of every court in construing a statute. United States v. Burleson, D.C., 127 F.Supp. 400. The obvious purpose of an act of Congress will be sustained by the courts, notwithstanding a contrary construction of an executive department. Webster v. Luther, 163 U.S. 331, 16 S.Ct. 963, 41 L.Ed. 179; Alaska S. S. Co. v. United States, 290 U.S. 256, 54 S.Ct. 159, 78 L.Ed. 302; Brannan v. Stark, 342 U.S. 451, 72 S.Ct. 433, 96 L.Ed. 497.

■ The Congress plainly intended that the Tennessee Valley Authority, or its subordinate locally owned electrical energy distribution systems, shall provide financial assistance in lieu of taxation to local governments in which such power operations are carried on, and that this policy be implemented either directly by the T.V.A. or indirectly through the locally owned power distribution systems. The stated object of the legislation providing for tax equivalent payments is the payment " * * * in lieu of taxes on all property allocated to power (in)

an amount equal to what would be paid as taxes on said property if the same were privately owned * * *." Report No. 1310 on S. 2925, 76th Congress, 3rd Session.

The Court concludes that the Congress indicated a triple intention with reference to T.V.A. tax equivalent payments of the third type described, *supra, i. e.,*

First: that all local governments involved, including the defendant County, should share in this third type of T.V.A. tax equivalent payments. Cf. Rutherford County v. City of Murfreesboro, 205 Tenn. 362, 326 S.W.2d 653;

Second: that either the municipalities or the states of their situs should provide for the proper distribution of the respective local governments' share of the equivalent payments of the third type collected by the municipalities. 16 U.S. C. § 831*l*; and

Third: that (a) where neither the state legislature nor the affected municipality made provision for a proper distribution of such funds, and (b) contracts for the sale of electric power to municipalities at rates including an amount to cover local tax equivalent payments to such municipalities in lieu of local taxes upon the municipalities' electric systems are entered into between the Tennessee Valley Authority and such municipal corporations, then (c) such contracts must provide a proper distribution by the municipalities of such amounts so collected by the cities.

The problem confronting the Court in construing the contract involved and the federal statute authorizing it, is one of implementation. Had the Tennessee General Assembly enacted a statute, or the City of Tullahoma an ordinance, providing for the proper distribution of this fund, there would be no problem for the Court. In fact, this Court would probably lack jurisdiction to construe the contract here involved in that event. Had the plaintiff City made voluntary payments to the defendant County, the situation might have been different.

As it is, however, neither the Tennessee nor the Tullahoma legislative bodies have acted as suggested by the federal law, and the municipality is being " * * * allowed to make a profit on the operation by collecting these tax equivalents and then retaining all of them for itself." Rutherford County v. City of Murfreesboro, supra, 326 S.W.2d 653, at page 656. This combination of circumstances renders essential action by judicial fiat to effectuate the third facet of the intention of the Congress, supra.

The Tennessee Valley Authority is a United States corporation. In the purview of law, it is a "person" and "may sue and be sued."

It is clear to the Court that the Congress placed a mandatory duty on T.V.A. to write a tax equivalent distribution provision into all contracts with municipalities of the nature under construction here unless the State in which the respective municipalities are situated had " * * * provided for the proper distribution to the State and county of any portion of tax equivalent so collected by the municipality * * *", or unless the municipality had previously and otherwise done so. As neither the State of Tennessee, contrary to its neighboring Commonwealth of Kentucky, nor the plaintiff City has made such provision, it was incumbent upon the Tennessee Valley Authority to include such a provision in its contract with the plaintiff City. The Tennessee Valley Authority did not do this. Its corporate "person" ignored the plain provisions of the law under its erroneous interpretation of that law. Rutherford County v. City of Murfreesboro, supra, 326 S.W.2d 653, 656.

What is the Court to do with a person who violates the law? The Supreme Court of the United States unequivocally settled that question many years ago with this language:

"Courts of justice are instituted to carry into effect the laws of a country, and they cannot become auxiliary to the violation of those

laws. There can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is itself illegal." Bank of United States v. Owens, 2 Pet. 527, 7 L.Ed. 508.

This particular "person", T.V.A., interprets the language of the Congress " * * * as expressing the *hope* of Congress that either the municipality or the state in which the municipality is situated will provide for the proper distribution of tax equivalents collected in lieu of county taxes." Memorandum as amicus curiae in City of Murfreesboro, Tenn. v. Rutherford County, Tennessee, 361 U.S. 919, 80 S.Ct. 257, 4 L.Ed.2d 187. This represents more excuse than legal premise in the Court's considered opinion. It is true as T.V.A. contended that the Congress may have recognized " * * * that the proper distribution of tax equivalents is a complex one involving various and sometimes conflicting equities which is appropriately left for solution to the legislatures of the states, or, in the absence of state legislative action, to the municipalities themselves. * * * " But, this begs the question of the responsibility imposed on T.V.A. by the law.

If this Court should adhere to the historical position assumed by T.V.A. as regards the question under discussion, the Court would thereby " * * * become auxiliary to the violation * * * " of a law.

■ An agreement which violates a provision of a constitutional statute is illegal. Ewert v. Bluejacket, 259 U.S. 129, 42 S.Ct. 442, 66 L.Ed. 858, and many other cases which could be cited. This is not to say that the contract between the Tennessee Valley Authority and the plaintiff City is void. The contract as a whole is not *malum in se*; and, contracts which violate a statute, if not *malum in se*, may be held valid, notwithstanding the infraction of law, whenever, as here, the public interest requires that such contracts shall be enforced. Binghampton Bridge (Chenango Bridge Co.) v. Binghampton

Bridge Co., 3 Wall. 51, 18 L.Ed. 137; 7 R.C.L., p. 1. The Congress intended for the defendant County to benefit as a direct result of the proper execution and performance of this contract. See American Law Institute Restatement, Contracts, Vol. 1, secs. 133–136.

■ Statutes relating to the subject matter of a contract and existing at the time of the execution of such contract become a part thereof and must be read into the contract, except where a contrary intent appears. Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; Connecticut Mutual Life Ins. Co. v. Cushman, 108 U.S. 51, 2 S.Ct. 236, 27 L.Ed. 648.

The enunciation of its position by T.V.A. with regard to the statute under consideration evinces its intention that the law should not become a part of its contract with the plaintiff City; but, this Court thinks that such does not provide an effective exemption to the general rule, supra.

■ A government corporation should advocate no intention contrary to law in executing contracts. Its very authority to enter into contracts is based in law. In that situation the Court is of the opinion that the statute under discussion must be read into the contract between the T.V.A. and the plaintiff City just as though an express provision to that effect had been inserted therein. Farmers' & Merchants' Bank, etc. v. Federal Reserve Bank, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157, 30 A.L.R. 365.

■ The contract being construed derives its efficacy from the Tennessee Valley Authority Act, as amended, 16 U.S.C. ch. 12–A, and the contract is circumscribed by all the pertinent provisions of that statute. Armour Packing Co. v. United States, supra.

■ The Court has no power to make a new contract between the T.V.A. and the plaintiff municipality. The desirable flexibility of declaratory relief does not extend that far. American Fidelity & Cas. Co. v. St. Paul-Mercury In-

demnity Co., 5 Cir., 248 F.2d 509, on petition to rehear. But the Court can and will read into the contract involved what the law had previously put there.

Stripped of all its complexities there is but one basic issue this Court is to decide, *viz.*, does the defendant County have a right of action to compel the plaintiff City to pay over the sum of $27,892.76 the latter collected in lieu of county taxes for the year 1959? No other relief is sought by either party to this action. Such a declaration is permissible under 28 U.S.C. § 2201, " * * * whether or not further relief is or could be sought." This section allows a prospective defendant, such as the plaintiff City, to undertake to establish its nonliability. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed. 2d 988.

It is this Court's opinion that, reading into the contract the provisions of 16 U.S.C. § 831*l*, the defendant County does have a right of action to compel the plaintiff City to pay over said above sum.

The Court has before it in this record no formula from which to determine whether payment of $27,892.76 for the year at issue is the "proper" distribution to the defendant County of the state and county tax equivalent collected by the plaintiff City; nor can the Court conclude that either the General Assembly of Tennessee or the Tullahoma City Council would have considered that amount the "proper" distribution. Resort is made, in this situation, to the only formula available to the Court, *i. e.*, the one agreed to by the plaintiff City and the T.V.A. in section 10(c) (2) of the schedule of terms and conditions of their contract, supra. The gist of this formula is that the tax equivalent involved shall be " * * * an amount calculated by applying the prevailing county * * * tax rate * * * to the value of the electric system; * * * " and, in the absence of the establishment of the "proper" distribution of such fund by either the Tennessee legislature or the plaintiff City as the Congress intended,

the Court applies this as the proper distribution made necessary by these findings and conclusions.

Although this has been described as a test case, all the Court has decided here is the right of action of the defendant County against the plaintiff City for the sum of $27,892.76 for the year 1959. Other considerations, such as proper legislative and contractual amendments, as examples, might deserve attention in regard to other claims.

Judgment will be entered accordingly on submission and approval of an appropriate order, and this opinion will serve as the required findings of fact and conclusions of law.