The Town of Courtland entered into a contract with the Tennessee Valley Authority ("TVA") in 1976 for the provision of electricity throughout Lawrence County, Alabama, including the Town of North Courtland. Because of Courtland's activities in regard to that contract, North Courtland sued Courtland in 1990, alleging that Courtland was operating a business within the police jurisdiction and corporate limits of North Courtland and was, therefore, liable for a privilege license tax that Courtland had not paid since 1985. North Courtland amended its original complaint to allege, as a third-party beneficiary of the TVA contract, breach of contract, unjust enrichment, conversion, and breach of fiduciary duty, based upon its contention that Courtland had failed to distribute a portion of "in lieu of tax" payments to North Courtland as North Courtland says Courtland is required to do by the contract between the TVA and Courtland.
While this action was pending in the Lawrence County Circuit Court, Courtland sought a declaratory judgment in the United States District Court for the Northern District of Alabama, asking that court to declare that North Courtland's license tax, as applied to Courtland, is invalid. The court held that "[b]ecause the Town of Courtland is contractually bound to operate its facility at a zero profit margin, hence not producing revenue, . . . North Courtland may not impose a tax on the Town of Courtland's electric operation."
Following the district court's order, Courtland moved for a summary judgment in the circuit court. The court entered the following order, from which North Courtland appeals:
 "This cause coming on to be heard on the defendant's Motion for Summary Judgment as to the plaintiff's claim for compensation and damages resulting from the furnishing of electricity by the Town of Courtland to the corporate limits and police jurisdiction of the Town of North Courtland, Alabama and the Court *Page 1337 
having considered the contract made and entered into as of the 27th day of May 1976, . . . between Tennessee Valley Authority, a corporation created and existing under and by virtue of the Tennessee Valley Authority Act of 1933, as amended and the Town of Courtland, a municipal corporation existing under and by virtue of the laws of the State of Alabama; the rationale of The City of Sheffield, Alabama vs. Town of Cherokee, Alabama, Civil Action 89-AR-5073-NE (October 12, 1989), and the Order of Senior Judge Seybourn H. Lynne entered on the 28th day of December 1990 among the same parties in The Town of Courtland, Alabama, a municipal corporation vs. Town of North Courtland, a municipal corporation, Civil Action 90-L-1346-NE, wherein it was held that the Town of North Courtland could not impose a tax on the Town of Courtland's electric operation.
 "FURTHERMORE, the Court finds that that portion of the original complaint wherein the plaintiff contends that a privilege license tax is applicable to the defendant for the furnishing of electricity within the corporate limits and the police jurisdiction of the Town of North Courtland and the amended complaint consisting of four Counts filed on the 14th day of December 1990 do not raise any genuine issue of a material fact.
 "It is accordingly ORDERED, ADJUDGED and DECREED by the Court that there is no genuine issue of fact alleged in the original complaint and the amended complaint for the furnishing of electricity by the Town of Courtland, Alabama within the corporate and police jurisdiction of the Town of North Courtland, Alabama and Partial Summary Judgment is hereby awarded to the defendant thereon.
"DONE and ORDERED this 22nd day of March 1991.
 "/s/ __________ "PHILIP REICH, CIRCUIT JUDGE"
Although the trial court purported to enter a partial summary judgment in favor of Courtland, we believe that, in effect, the trial court entered a complete summary judgment. The order states that "there is no genuine issue of fact alleged in the original complaint and the amended complaint for the furnishing of electricity by the Town of Courtland." It is our understanding of the order that the court found summary judgment to be appropriate on all of North Courtland's claims.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering a summary judgment. The rule requires the trial court, in order to enter a summary judgment, to determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990). *Page 1338 
Because this action was not pending on June 11, 1987, Ala. Code 1975, § 12-21-12, mandates that the nonmovant, North Courtland, meet its burden by "substantial evidence." Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence rule, the nonmovant must present "evidence of such weight and quality that fairminded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." Schwarzer, Summary JudgmentUnder the Federal Rules: Defining Genuine Issues of MaterialFact, 99 F.R.D. 465, 481 (1982).
 I. The Privilege License Tax
North Courtland's original complaint alleged that Courtland was liable for a privilege license tax because Courtland was furnishing electricity within the corporate limits and the police jurisdiction of North Courtland. As noted earlier, the United States District Court for the Northern District of Alabama held that North Courtland could not impose the license tax on Courtland. Town of Courtland, Alabama v. Town of NorthCourtland, Alabama, No. 90-L-1346-NE (N.D.Ala., Dec. 28, 1990). In so holding, the federal district court relied on City ofSheffield, Alabama v. Town of Cherokee, Alabama, No. 89-AR-5073-NW (N.D.Ala., Oct. 12, 1989). In City of Sheffield, the court held that a municipality may not "levy a tax against another municipal corporation which operates an electric operation on a non-profit basis pursuant to the TVA Act." In reaching its conclusion, the court in City of Sheffield
recognized 16 U.S.C. § 831l (1988), which provides, in pertinent part, the following:
 "In order to render financial assistance to those States and local governments in which the power operations of the Corporation are carried on and in which the Corporation has acquired properties previously subject to State and local taxation, the board is authorized and directed to pay to said States, and the counties therein, for each fiscal year, beginning July 1, 1940, . . . percentages of the gross proceeds derived from the sale of power by the Corporation for the preceding fiscal year. . . . The payments herein authorized are in lieu of taxation, and the Corporation, its property, franchises and income, are expressly exempted from taxation in any manner or form by any State, county, municipality, or any subdivision or district thereof."
Id. (emphasis added).
The trial court was clearly justified in relying on City ofSheffield and the district court's recognition therein that § 831l prohibits a municipality from levying "a tax against another municipal corporation which operates an electric operation on a non-profit basis pursuant to the TVA Act." Therefore, because Courtland was entitled to a judgment as a matter of law on the issue regarding the privilege license tax, we affirm the summary judgment as to that issue.
 II. Payments In Lieu of Taxes
North Courtland's amended complaint added four allegations to its original complaint. First, North Courtland, claiming to be a third-party beneficiary of the contract between the TVA and Courtland, alleged that Courtland had failed to comply with § 2 of the contract's "Schedule of Terms and Conditions" and had thereby breached the contract. The relevant parts of § 2 provide:
"2. Payments of or in Lieu of Taxes.
 "(a) To the extent revenues are available after the satisfaction of all items set forth in paragraphs (1), (2), and (3) of section 6(a) of the contract[1] of which *Page 1339 
these Terms and Conditions are a party, Municipality may take each year from the electric system, in lieu of taxes, an amount representing the fair share of the cost of government properly to be borne that year by its electric system. . ..
 "(b) It shall be the responsibility of Municipality to provide for such distribution as may be required by law or as it deems appropriate under the provisions of Section 13 of the TVA Act to the State, counties and any other municipal corporations in which it operates of any tax equivalents so collected by Municipality in lieu of State, county and other municipal taxes."
North Courtland alleged that Courtland had willfully refused to comply with its obligation to distribute to North Courtland any portion of collected tax equivalent payments or payments in lieu of taxes.[2] Second, North Courtland alleged that Courtland had been unjustly enriched by its failure to distribute the payments. Third, North Courtland alleged that, as a result of its failure to distribute the payments, Courtland had converted property of North Courtland. Finally, North Courtland alleged that Courtland had breached a fiduciary duty owed to North Courtland by its imposition of a three percent (3%) tax upon North Courtland. Section 2(c) of the "Schedule of Terms and Conditions" provides that the "[m]unicipality agrees that it will not impose any tax or other charge not expressly provided for in this contract upon the property or operations of its electric system, or upon the sale, purchase, use or consumption of electric energy supplied thereby."
In its entry of a summary judgment, which, as noted previously, we consider to be a complete summary judgment, the trial court necessarily held that none of the claims in the amended complaint raised a genuine issue of material fact and that Courtland was entitled to a judgment as a matter of law on each of those claims. We disagree.
Our review of the record in a light most favorable to North Courtland leads us to conclude that Courtland failed to make a prima facie showing that there was no genuine issue of material fact. Therefore, the burden did not shift to North Courtland to establish an issue of material fact. The trial court erred in entering a summary judgment in favor of Courtland on the claims alleged in North Courtland's amended complaint.
In the interest of facilitating the efficient disposition of this cause on remand, we adopt the rationale of the Supreme Court of Tennessee in Rutherford County v. City ofMurfreesboro, 205 Tenn. 362, 326 S.W.2d 653, cert. denied,361 U.S. 919, 80 S.Ct. 257, 4 L.Ed.2d 187 (1959), in its resolution of whether Rutherford County was entitled to any interest in tax equivalent payments received by the City of Murfreesboro. Initially, the court quoted the 1940 amendment to16 U.S.C. § 831l:
 "Nothing herein shall be construed to limit the authority of the Corporation in its contracts for the sale of power to municipalities, to permit or provide for the resale of power at rates which may include an amount to cover tax-equivalent payments to the municipality in lieu of State, county and municipal taxes upon any distribution system or property *Page 1340 
owned by the municipality, or any agency thereof, conditioned upon a proper distribution by the municipality of any amounts collected by it in lieu of State or county taxes upon any such distribution system or property; it being the intention of Congress that either the municipality or the State in which the municipality is situated shall provide for the proper distribution to the State and county of any portion of tax equivalent so collected by the municipality in lieu of State or county taxes upon any such distribution system or property."
205 Tenn. at 366, 326 S.W.2d at 654-55 (emphasis added inRutherford County). The court construed the amendment in the following manner:
 "We think it perfectly clear that the 1940 amendment means, if we may be permitted to paraphrase, that TVA has the discretion in making such contracts with municipalities either to include a provision for tax equivalent payments as therein described or to omit any such provision; but if such a provision be included, it must be conditioned upon a proper distribution by the municipality of any such amounts collected in lieu of State or County taxes upon any such distribution system or property. If this is not the proper construction of that amendment, then it must be said that Congress used quite a good many words unnecessarily and pointlessly, because otherwise under Sec. 10 of the TVA Act, the Authority already had unlimited power to include such terms for resale as might be necessary or desirable for carrying out the purposes of the Act.
 "As we see it, the only discretion is that which is vested in TVA whether to include the provision for payment of tax equivalents, but if such provision be included, it is on condition that the municipality make proper distribution to the respective governmental units.
". . . .
 ". . . [W]e think that the language 'conditioned upon a proper distribution' can only mean that the municipality must distribute these tax equivalents fairly and as a replacement of lost taxes as among the several governmental units; otherwise the municipality would be allowed to make a profit on the operation by collecting these tax equivalents and then retaining all of them for itself."
205 Tenn. at 367-69, 326 S.W.2d at 655-56 (emphasis added inRutherford County).
 III. Conclusion
Based upon the foregoing, the summary judgment in favor of Courtland is affirmed as to the issue of whether North Courtland may impose a privilege license tax. The judgment is reversed as to the claims of breach of contract, unjust enrichment, conversion, and breach of fiduciary duty arising out of Courtland's alleged failure to distribute the in-lieu-of-tax payments at issue. This cause is remanded for further proceedings consistent with our adoption of the rationale of the Supreme Court of Tennessee in RutherfordCounty v. City of Murfreesboro, 205 Tenn. 362, 326 S.W.2d 653
(1959).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Section 6(a) of the contract between the TVA and Courtland provides:
"6. Use of Revenues.
 "(a) Municipality agrees to use the gross revenues from electric operations for the following purposes:
 "(1) Current electric system operating expenses, including salaries, wages, cost of materials and supplies, power at wholesale, and insurance;
 "(2) Current payments of interest on System Indebtedness, and the payment of principal amounts, including sinking fund payments, when due;
 "(3) From any remaining revenues, reasonable reserves for renewals, replacements, and contingencies; and cash working capital adequate to cover operating expenses for a reasonable number of weeks; and
 "(4) From any revenues then remaining, tax equivalent payments into Municipality's general funds, as more particularly provided in section 2 of the Schedule of Terms and Conditions hereinafter referred to."
[2] We note that §§ 40-28-1 to -4, Ala. Code 1975, are inapplicable to the present circumstances. These sections address "payments made directly to the state of Alabama and not to local governments." Ala. Code 1975, § 40-28-1(6). See City ofSheffield, Alabama v. Town of Cherokee, Alabama, No. 89-AR-5073-NW, n. 4 (N.D.Ala., Oct. 12, 1989) ("Alabama still has no law concerning the distribution of tax equivalent payments made by TVA directly to municipalities").