COOK, Justice.
This is the second time that this case has come before this Court on appeal from a summary judgment. For a disposition of the first appeal, wherein this court reversed the summary judgment and remanded the case, see Town of North Courtland v. Town of Courtland, 597 So.2d 1336 (Ala.1992) (North Courtland I).
The facts of the case are stated in North Courtland I, but, for the convenience of the reader, they are repeated here:
“The Town of Courtland entered into a contract with the Tennessee Valley Authority (‘TVA’) in 1976 for the provision of electricity throughout Lawrence County, Alabama, including the Town of North Courtland. Because of Courtland’s activities in regard to that contract, North Courtland sued Courtland in 1990, alleging that Courtland was operating a business within the police jurisdiction and corporate limits of North Courtland and was, therefore, liable for a privilege license tax that Courtland had not paid since 1985. North Courtland amended its original complaint to allege, as a third-party beneficiary of the TVA contract, breach of contract, unjust enrichment, conversion, and breach of fiduciary duty, based upon its contention that Courtland had failed to distribute a portion of in ‘in lieu of tax’ payments to North Courtland as North Courtland says Courtland is required to do by the contract between the TVA and Courtland.
“While this action was pending in the Lawrence County Circuit Court, Courtland sought a declaratory judgment in the United States District Court for the Northern District of Alabama, asking that court to declare that North Courtland’s license tax, as applied to Courtland, is invalid. The court held that ‘[bjecause the Town of Courtland is contractually bound to operate its facility at a zero profit margin, hence not producing revenue, ... North Courtland may not impose a tax on the Town of Courtland’s electric operation.’
“Following the district court’s order, Courtland moved for a summary judgment in the circuit court. The court entered the following order, from which North Court-land appeals:
“ ‘This cause coming on to be heard on the defendant’s Motion for Summary Judgment as to the plaintiffs claim for compensation and damages resulting from the furnishing of electricity by the Town of Courtland to the corporate limits and police jurisdiction of the Town of North Courtland, Alabama and the Court having considered the contract made and entered into as of the 27th day of May 1976, ... between Tennessee Valley Authority, a corporation created and existing under and by virtue of the Tennessee Valley Authority Act of 1933, as amended and the Town of Courtland, a municipal corporation existing under and by virtue of the laws of the State of Alabama; the rationale of The City of Sheffield, Alabama vs. Town of Cherokee, Alabama, Civil Action 89-AR-5073-NE [1989 WL 513216] (October 12, 1989), and the Order of Senior Judge Seyboum H. Lynne entered on the 28th day of December 1990 among the same parties in The Town of Courtland, Alabama, a municipal corporation vs. Town of North Courtland, a municipal corporation, Civil Action 90-L-1346-NE [1990 WL 605345], wherein it was held that the Town of North Courtland could not impose a tax on the Town of Court-land’s electric operation.
‘FURTHERMORE, the Court finds that that portion of the original complaint wherein the plaintiff contends that *680 a privilege license tax is applicable to the defendant for the furnishing of electricity within the corporate limits and the police jurisdiction of the Town of North Courtland and the amended complaint consisting of four Counts filed on the 14th day of December 1990 do not raise any genuine issue of a material fact.
‘It is accordingly ORDERED, ADJUDGED and DECREED by the Court that there is no genuine issue of fact alleged in the original complaint and the amended complaint for the furnishing of electricity by the Town of Courtland, Alabama within the corporate and police jurisdiction of the Town of North Court-land, Alabama and Partial Summary Judgment is here awarded to the defendant thereon.’ ”
North Courtland I, 597 So.2d at 1336-37.
Courtland’s contract with TVA provided:
“6. Use of Revenues.
“(a) Municipality agrees to use the gross revenues from electric operations for the following purposes:
“(1) Current electric system operating expenses, including salaries, wages, cost of materials and supplies, power at wholesale, and insurance;
“(2) Current payments of interest on System Indebtedness, and the payment of principal amounts, including sinking fund payments, when due;
“(3) From any remaining revenues, reasonable reserves for renewals, replacements, and contingencies; and cash working capital adequate to cover operating expenses for a reasonable number of weeks; and
“(4) From any revenues then remaining, tax equivalent payments into municipality’s general funds, as more particularly provided in section 2 of the Schedule of Terms and Conditions hereinafter referred to.”
(Emphasis added.)
Section 2 of the “Schedule of Terms and Conditions” states:
“(a) To the extent revenues are available after the satisfaction of all items set forth in paragraphs (1), (2), and (3) of section 6(a) of the contract of which these Terms and Conditions are a part, Municipality may take each year from the electric system, in lieu of taxes, an amount representing the fair share of the cost of government properly to be borne that year by its electric system, not to exceed a maximum amount (including any refunds or other benefits accruing to Municipality’s nonelectric operations as a consequence of any State or Federal taxes or charges upon Municipality’s electric operations) calculated by applying the prevailing municipal, county and State property tax rates to the depreciated original cost of tangible property used in electric operations within the respective taxing jurisdictions at the beginning of each tax year. Determination of the amount to be taken in lieu of taxes for each year shall be made as early in each year as practicable and shall become final at the end of such year.
“(b) It shall be the responsibility of Municipality to provide for such distribution as may be required by law or as it deems appropriate under the provisions of Section 13 of the TVA Act to the State, counties and any other municipal corporations in which it operates of any tax equivalents so collected by Municipality in lieu of State, county and other municipal taxes.”
On remand, the trial judge’s order entering a summary judgment a second time stated:
“This cause is before the Court upon the reversal and remand by the Supreme Court of Alabama of this Court’s partial summary judgment order of March 22, 1991 as to the Plaintiffs amended complaint seeking from the Defendant a distribution of revenues from the sale of TVA power, and damages as alleged in the amended complaint based upon breach of contract, unjust enrichment, conversion and breach of a fiduciary duty. The Plaintiff and Defendant have each filed motions for summary judgment and argument has been heard and authority submitted, and this Court is of the opinion that an order is due to be entered accordingly.
“The Court finds that the Defendant, the Town of Courtland, entered into a contract *681 on May 27, 1976 with TVA wherein TVA would sell electric power to the municipality of Courtland and in turn Courtland agreed to operate and distribute electric power to its customers on a nonprofit basis. The TVA contract of May 27, 1976 authorized that regarding the use of revenues derived from the sale of electric power by the Defendant, that before any payment be made to other municipalities from revenues derived, the municipality of Courtland may use revenues to pay principal and/or interest on debt incurred, upgrade and maintain its electric system, and numerous other authorized expenditures.
“The Court finds that from the affidavits and documents submitted in support of the Defendant’s motion for summary judgment, no monies were available to the Defendant to disburse to the Plaintiff, North Courtland, or others and, in fact, it appears that Courtland, in 1983, was forced to borrow some Three Hundred Thousand Dollars ($300,000.00) through the issue of general warrants to upgrade its electrical system and ultimately forced to pay the interest on this debt out of its general fund. It therefore appears to the Court that there was no surplus of revenue to be disbursed to the Plaintiff or others similarly situated.
“Further, counsel for the Defendant has submitted for the Court’s review, the case of City of Tullahoma v. Coffee County, Tennessee, 328 F.2d 683 (6th Cir.1964), wherein the United States Court of Appeals cited the Rutherford County v. City of Murfreesboro [City of Murfreesboro v. Rutherford County] decision, 361 U.S. 919 [80 S.Ct. 257, 4 L.Ed.2d 187] (1959), and held that as to the issue of distribution of revenues in lieu of taxes, ... Congress intended ... TVA to have no duty with reference to the proper distribution of the tax equivalent payments and left this for a determination exclusively by the municipality itself. The Court further states that the municipality in question would be therefore entitled to retain the entire fund representing tax equivalent payments and no action would he on the part of another municipality or government entity to recover any part of such payments. The Court, in City of Tullahoma went on to hold that the decision of Rutherford County v. City of Murfreesboro [City of Murfreesboro v. Rutherford County] should not be followed. This Court is aware that the order of remand adopted the reasoning of the Rutherford decision.
“The Court therefore finds as to the Plaintiffs claim for relief in Counts I, II, III and IV brought against the Defendant that there is no genuine issue of any material fact and that the Defendant is entitled to a judgment in its favor as a matter of law. It is, therefore,
“ORDERED AND DECREED that the Defendant is awarded a judgment in its favor as to Counts I, II, III and IV of the Plaintiffs complaint.
“It is FURTHER ORDERED that costs of this action are taxed as paid.
“It is FURTHER ORDERED that the parties receive a copy of this order, by and through their attorneys of record, by U.S. Mail, postage prepaid.
“DONE AND ORDERED, this 2th day of May, 1993.”
We have reviewed the record in this case and we conclude that our initial adoption of the language in Rutherford County v. City of Murfreesboro, 205 Tenn. 362, 326 S.W.2d 653, cert. denied, 361 U.S. 919, 80 S.Ct. 257, 4 L.Ed.2d 187 (1959), was premature. We have examined the rationale of City of Tullahoma v. Coffee County, Tennessee, 328 F.2d 683 (6th Cir.1964), and conclude that the trial court correctly entered the summary judgment in light of that ease.[1]
The facts and rationale of City of Tullahoma v. Coffee County, Tennessee pertinent to our decision in this case are as follows:
“The Tennessee Valley Authority is authorized by Section 10 of the Act (16 U.S.C. § 831i) to sell its surplus power to states, counties, municipalities, corporations, partnerships and individuals, and to include in any contract for the sale of power ‘... such terms and conditions, in- *682 eluding resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of this chapter,. ...’
“The City obtains its electric power supply from TVA under a contract executed July 1, 1947. Section 6 of the contract provides that gross revenues from electric operations shall be first applied and used for certain purposes in a specified order of priority and that from the remaining revenues the City ‘... may thereafter pay into its General Fund a tax equivalent as provided ... in the Schedule of Terms and Conditions attached hereto.’ Section 10 of the contract provides:
“ ‘It is hereby recognized and declared that, pursuant to the obligations imposed by the Tennessee Valley Authority Act of 1933 as amended, Municipality’s operation of a municipal electric distribution system and Authority’s wholesale service thereto are undertaken primarily for the benefit of ratepayers and that Municipality shall receive from the operation thereof for the benefit of its General Fund, to be used for any permissible municipal purpose, only (a) a return on any investment made from general funds in the electric system, and (b) an amount in lieu of taxes, representing a fair share of the cost of government properly to be borne by such system....’
“Section 10(c) of the ‘Schedule of Terms and Conditions’ which is made a part of the contract provides:
“ ‘Municipality may take from the electric department revenues or funds for the general funds of Municipality an amount in lieu of taxes (representing a fair share of the cost of government properly to be borne by its electric distribution system) to be determined subject to the terms and conditions hereafter stated.
“ ‘(1) To the extent surplus revenues are available, ... Municipality may take from the electric department revenues or funds for the general funds of Municipality an amount calculated by applying the prevailing municipal property tax rate to the value of the property used in the electric operations within the municipal limits.’
“‘(2) To the extent surplus revenues are available, ... Municipality may take from the electric department revenues or funds for the general funds of Municipality an amount calculated by applying the prevailing county and State tax rates to the value of the electric system; ....’
“Pursuant to the terms and provisions of the contract, the City takes from the electric system revenues for its general fund an amount calculated by applying the prevailing municipal and county property tax rates to the depreciated original cost of properties used in its electric operations. Sometime prior to the institution of this action, the County made demand upon the City for the sum of $27,892.76 taken from revenues of the electric system for the calendar year 1959 and placed in the City’s general fund, an amount calculated by applying the county property tax rate to the depreciated cost of tangible property used in electric operations. The County based its demand upon the fourth paragraph of Section 13 of the Act, as amended in 1940 (16 U.S.C. § 831l). The first three paragraphs of that Section authorize and direct TVA to make certain payments in lieu of taxation to states and counties in which it has acquired properties previously subject to state and local taxation. The fourth paragraph, the interpretation of which is determinative of the present controversy, provides:
“ ‘Nothing herein shall be construed to limit the authority of the Corporation in its contracts for the sale of power to municipalities, to permit or provide for the resale of power at rates which may include an amount to cover tax-equivalent payments to the municipality in lieu of State, county, and municipal taxes upon any distribution system or property owned by the municipality, or any agency thereof, conditioned upon a proper distribution by the municipality of any amounts collected by it in lieu of State or county taxes upon any such distribution system or property; it being the *683 intention of Congress that either the municipality or the State in which the municipality is situated shall provide for the proper distribution to the State and county of any portion of tax equivalent so collected by the municipality in lieu of State or county taxes upon any such distribution system or property.’
[[Image here]]
“At the outset it must be conceded, we believe, that the meaning to be ascribed to the provision of Section 13 here involved is not free from doubt and that its language is ambiguous. On the basis of the text alone there would appear to be at least four views which might reasonably be taken as its meaning. One rendition is that while TVA is not required to include a contractual provision for tax equivalent payments and is not required in any event to determine the ‘proper’ distribution of such payments by the municipality to the County, it nevertheless is obligated to refuse to ‘permit or provide’ for tax equivalent payments unless provision has first been made for such distribution either by the State or by the municipality. Under this interpretation the distribution would be left entirely to the State or to the municipality in conformity with the expressed intention of Congress that the municipality or State shall provide for the ‘proper’ distribution of amounts collected by the municipality in lieu of State or County taxes. At the same time effect would be given to the words of the statute, ‘conditioned upon a proper distribution by the municipality of any amounts collected by it in lieu of State or county taxes....’
“Another possible interpretation is that TVA has no obligation when entering into a contract with a municipality in permitting or providing for tax equivalent payments to determine that a proper method of distribution has been provided for either by the State or the municipality, and that its obligation is fully satisfied simply by including a provision in the contract that either the State or the municipality shall provide for such proper distribution, leaving the performance of this obligation entirely to the state legislature or to the municipality. Such an interpretation also would appear to give effect to the pertinent words of Section 13.
“A third interpretation is the one adopted by the District Court:
“‘It is clear to the Court that the Congress placed a mandatory duty on T.V.A. to write a tax equivalent distribution provision into all contracts with municipalities of the nature under construction here unless the State in which the respective municipalities are situated has “... provided for the proper distribution to the State and county of any portion of tax equivalent so collected by the municipality ...,” or unless the municipality had previously and otherwise done so. As neither the State of Tennessee, contrary to its neighboring Commonwealth of Kentucky, nor the plaintiff City has made such provision, it was incumbent upon the Tennessee Valley Authority to include such a provision in its contract with the plaintiff City. The Tennessee Valley Authority did not do this. Its corporate “person” ignored the plain provisions of the law under its erroneous interpretation of that law. Rutherford County v. City of Murfreesboro, supra, [205 Tenn. 362, 370,], 326 S.W.2d 653, 656.’
“A fourth view of the statute (perhaps only slightly different from the second) is that Congress simply expressed a general intention that there should be a proper distribution of tax equivalent payments made to the states and counties, but did not undertake to implement such intention by imposing duties to that effect either upon TVA, the states, or upon municipalities, leaving this matter exclusively to local control or regulation. Under this view TVA would have no duty with reference to the proper distribution of tax equivalent payments but such distribution would be determined exclusively by the state or by the municipality itself. In the absence of such provision for distribution, the municipality would be entitled to retain the entire fund representing tax equivalent payments and no action would lie on the part of the County to recover any part of such payments.
*684 “It seems entirely clear, therefore, in view of the diverse and varied meanings and interpretations which may be ascribed to the statutory language that resort must be had to other aids in determining the Congressional intent. In light of the background of the provision, its legislative history, and contemporaneous and long continued administrative interpretation, coupled with the apparent acquiescence by Congress in such interpretation, we are persuaded that Section 13 must be construed in conformity with the fourth view set out above.
[[Image here]]
“The provision of Section 13 now under consideration, when viewed in the light of its background and history, and also in the light of the broad authority already conferred upon TVA under Section 10, was, in our view, intended primarily to make clear that the amendment of Section 13 as to payments of tax equivalents by TVA to states and counties should not be construed to impair or interfere with TVA’s existing authority under Section 10 to permit or provide for such tax equivalent payments by municipalities.... As already stated, in exercising its authority under Section 10, it had been the uniform practice of TVA in contracting with municipalities to leave the matter of distribution of tax equivalents entirely to the states or municipalities concerned. If Congress had intended to change or alter such settled practice so as to control by Congressional fiat the matter of distribution of municipal tax equivalents, it is only reasonable to suppose that it would have amended Section 10 accordingly, or at least that it would have expressed its intention in direct and unmistakable terms.”
City of Tullahoma v. Coffee County, Tennessee, 328 F.2d 683, 684-85, 686-90, 691-92 (6th Cir.1964).
We adopt the rationale of the Court of Appeals for the Sixth Circuit in City of Tullahoma v. Coffee County, Tennessee. Applying that rationale in this ease, we conclude that the trial court properly entered the summary judgment for the Town of Courtland.
AFFIRMED.
MADDOX, SHORES, HOUSTON, INGRAM, and BUTTS, JJ., concur.
HORNSBY, C.J., concurs specially.

. We note that the parties failed to cite City of Tullahoma in the original submission of this case, and although that case does not explicitly overrule County of Rutherford, we find the authority of the more recent federal case persuasive.